KELLOGG, HUBER, HANSEN, TODD, EVANS & FIGEL, P.L.L.C.
SUMNER SQUARE
1615 M STREET, N.W.
SUITE 400
WASHINGTON, D.C. 20036-3215

(202) 326-7900

FACSIMILE:
(202) 326-7999

October 1, 2013

*Via ECF and Hand Delivery*

Hon. Lewis A. Kaplan
United States District Judge
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, NY 10007-1312

Re:   *In re Bank of New York Mellon Corporation Foreign Exchange Transactions Litigation*, No. 12 MD 2335 (LAK); *Louisiana Municipal Police Employees' Retirement System v. The Bank of New York Mellon Corporation*, No. 11 Civ. 9175 (LAK)

Dear Judge Kaplan:

Pursuant to Fed. R. Civ. P. 34, the procedures set forth in the Pilot Project Regarding Case Management Techniques for Complex Civil Cases, Case No. 12-md-2335 (Dkt. No. 2),[1] Defendant The Bank of New York Mellon Corporation ("BNYM") moves to compel the production of certain documents responsive to BNYM's First Set of Document Requests.[2] BNYM certifies that the parties have conferred and are at impasse on these issues.

I.   **Plaintiffs Are Improperly Withholding Relevant Evidence**

Plaintiffs, who seek to represent a class of investors in BNYM common stock, allege that BNYM defrauded its own investors by: (1) failing to divulge in SEC filings its pricing methodology for standing instruction transactions; and (2) misrepresenting that methodology on a marketing website. *See* Dkt. No. 93 ("Compl."), at ¶¶ 84-112. With few exceptions, Plaintiffs have agreed to produce only documents that reference BNYM or its ticker symbol "BK." *See* Ltr. from L. Posner to A. Shen at 2-5 (Sept. 13, 2013) ("Posner Ltr.") (attached as Exh. B).

---

[1] Although this Court ordered previously that the Pilot Project would not apply to this individual action, *see* Dkt. No. 20, the case was subsequently consolidated into the MDL, where the Pilot Project governs. *See* Case No. 12-md-2335 (Dkt. No. 2).

[2] Plaintiffs are the State of Oregon ("Oregon"), Laborers' Local 235 Benefit Fund, and Pompano Beach General Employees Retirement System (collectively, "Plaintiffs"). BNYM's Requests to each Plaintiff (and Plaintiffs' responses) are materially identical. For convenience, BNYM refers here to its Requests to Oregon, which are attached as Exh. A.

This narrow approach deprives BNYM of documents relevant to one of its central defenses: that BNYM's statements were not fraudulent because Plaintiffs knew, or should have known, what those statements meant.[3]  Plaintiffs should produce all documents relevant to that defense, including evidence of Plaintiffs' understanding of the phrase "best execution" and custodial foreign-exchange pricing.[4]

**1**.  Request No. 25 seeks documents relating to the term "best execution."  Plaintiffs have stated that they will produce only such documents that also reference BNYM and foreign exchange.  *See* Posner Ltr. at 4; Ltr. from A. Shen to Counsel at 7 (Sept. 6, 2013) ("Shen Ltr.") (attached as Exh. C).  That limitation conflicts with Plaintiffs' core theory that "best execution" has a particular meaning in the context of publicly-traded *equity* securities that, when extended to bilateral over-the-counter foreign-exchange trades, required BNYM to price every transaction at the best rate available on the interbank market.  *See* Compl. ¶¶ 59-60, 109-110.  Indeed, Plaintiffs premise their theory of foreign-exchange "best execution" on a so-called "industry[] definition" drawn explicitly from the equities context.  *Id.* ¶ 60.  Having expressly invoked a broad securities-trading definition of "best execution," Plaintiffs cannot now withhold the documents relevant to that supposed definition.  As this Court observed, whether it is proper to import "best execution" standards from securities trading to foreign exchange poses "heavily fact-bound question[s]" that are "best left to a motion for summary judgment after discovery."  *Southeastern Pennsylvania Transp. Auth. v. Bank of New York Mellon Corp.*, 921 F. Supp. 2d 56, 77, 78 n.119 (S.D.N.Y. 2013).  Plaintiffs' understanding of "best execution" with respect to various categories of asset classes and counterparties is thus highly relevant.

**2.**  Request Nos. 17-24 & 35 seek documents that would reveal Plaintiffs' subjective understanding of foreign-exchange pricing and custodial foreign-exchange services.  Plaintiffs have refused to produce such documents unless they specifically reference BNYM.  *See* Posner Ltr. at 3.  BNYM intends to show that no investor with a rudimentary understanding of foreign exchange, or basic custody services, could reasonably have believed that BNYM would execute standing instruction transactions at the rates Plaintiffs allege – *i.e.*, at its own cost of funds.  *See United States v. Bank of New York Mellon*, --- F. Supp. 2d ---, 2013 WL 1749418, at *26 (S.D.N.Y. 2013) (expressing "sympath[y]" for argument that customers "must have known that some spread would be charged").  Evidence that Plaintiffs knew how competing providers priced foreign-exchange transactions is relevant to that defense.  *See Emergent Capital Inv. Mgmt., LLC v. Stonepath Grp., Inc.*, 343 F.3d 189, 196 (2d Cir. 2003) (reliance involves consideration of plaintiff's "'knowledge and experience'").  Simply put, Plaintiffs are themselves customers of other custody banks.  Evidence that they knew those banks were charging a premium on standing instruction transactions would support BNYM's argument that they could not reasonably have believed that BNYM was pricing its own transactions at cost.  *See, e.g.*, Exh. D at 8

---

[3] *See In re Sierra Wireless, Inc. Sec. Litig.*, 482 F. Supp. 2d 365, 375 (S.D.N.Y. 2007) (statement not "misleading" if investors are "well aware" of truth); *In re IndyMac Mortgage-Backed Sec. Litig.*, 718 F. Supp. 2d 495, 512 n.131 (S.D.N.Y. 2010) (Kaplan, J.) ("no duty to disclose information to one who reasonably should be aware of it") (internal quotations omitted); *Compania Sud-Americana de Vapores S.A. v. IBJ Schroder Bank & Trust Co.*, 785 F. Supp. 411, 419-20 (S.D.N.Y. 1992) (no fraud where plaintiffs could make "simple inquiries" into "foreign exchange rates").

[4] To the extent Plaintiffs have objected to producing additional documents on burden grounds, BNYM has suggested that Plaintiffs use search terms to locate and produce responsive documents – an approach to which every other MDL plaintiff has agreed.  *See* Shen Ltr. at 1-2, 7.  Plaintiffs have rejected that proposal.

This argument applies with particular force to lead plaintiff Oregon, a large pension fund that retained State Street Bank and Trust Company ("State Street") as custodian. Plaintiffs allege (at ¶¶ 71-76) that State Street offered standing instruction services similar to BNYM's own program. Plaintiffs referenced foreign-exchange litigation involving State Street repeatedly in opposing BNYM's motion to dismiss. *E.g.*, Dkt. No. 128 at 4, 12-14, 23-27, 52-55. Documents reflecting Oregon's knowledge of State Street's foreign-exchange program, as well as any use Oregon made of standing instructions after the State Street lawsuit was unsealed in October 2009, are thus especially important. Such documents bear not only on reasonable reliance, but also on whether Plaintiffs' claims are timely – or whether they were instead on inquiry notice of those claims. Inquiry notice is not limited to "company-specific storm warnings"; it turns instead on the "totality of the circumstances." *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 428 (2d Cir. 2008). Evidence that Plaintiffs understood industry conventions concerning standing instruction pricing is therefore relevant to BNYM's statute-of-limitations defense.

Plaintiffs have asserted (Posner Ltr. at 4) that such discovery "would not establish class-wide knowledge." That is beside the point. BNYM is entitled to discover facts about Plaintiffs' *specific* knowledge of standing instruction practices. To be sure, if both Plaintiffs and the class had such knowledge, BNYM should prevail on the merits. And if only Plaintiffs had such knowledge, they are likely subject to unique defenses that render them atypical and unsuitable class representatives.[5] Either way, the discovery BNYM seeks is relevant.

## II.  Plaintiffs Should Produce Documents Across a Reasonable Timeframe

Plaintiffs have refused to produce documents (with two minor exceptions)[6] from outside the time period of February 28, 2008 through January 2, 2012 – *i.e.*, the Class Period plus an additional ninety days. *See* Posner Ltr. at 3. This is improper. As an initial matter, Plaintiffs are significantly out of step with the other MDL parties, who have generally agreed to produce documents from January 1, 1999 through March 31, 2012. In fact, BNYM has generally agreed to that timeframe for its own production.

Plaintiffs' position is also unreasonable on its merits. *First*, documents both before and after the Class Period could demonstrate Plaintiffs' understanding of foreign-exchange pricing and "best execution" during the Class Period. *Second*, documents reflecting Plaintiffs' trades in BNYM securities after the Class Period may help BNYM refute Plaintiffs' claim of reliance and their adequacy as class representatives. *See Rocco v. Nam Tai Elecs., Inc.*, 245 F.R.D. 131, 136 (S.D.N.Y. 2007) ("a person that increases his holdings in a security after revelation of an alleged fraud . . . is subject to a unique defense") (internal quotations omitted). *Finally*, documents reflecting Plaintiffs' use of custodial foreign-exchange services after the disclosure of other foreign-exchange lawsuits are relevant to reliance and transaction causation. Plaintiffs thus should produce documents from January 1, 2005 through March 31, 2012. *See* Shen Ltr. at 2-3.

---

[5] *See In re Harcourt Brace Jovanovich, Inc. Sec. Litig.*, 838 F. Supp. 109, 113 (S.D.N.Y. 1993) (named plaintiff "subject to an arguable defense of non-reliance on the market has been held . . . atypical of the class").

[6] Plaintiffs have agreed to produce documents outside that timeframe only if they are investment contracts or documents identifying trades relevant to damages calculations for their Securities Act claims. *See* Posner Ltr. at 3.

Dated:  October 1, 2013

Respectfully submitted,

THE BANK OF NEW YORK MELLON CORPORATION

/s/ Andrew C. Shen
───────────────────────────
Reid M. Figel (RF-8663)
Rebecca A. Beynon (*pro hac vice*)
David L. Schwarz (*pro hac vice*)
Derek T. Ho (DH-0104)
Gregory G. Rapawy (*pro hac vice*)
Andrew C. Shen (AS-7963)
KELLOGG, HUBER, HANSEN, TODD,
  EVANS & FIGEL, P.L.L.C.
1615 M Street, NW, Suite 400
Washington, DC 20036
Telephone:  (202) 326-7900
Facsimile:  (202) 326-7999
rfigel@khhte.com
rbeynon@khhte.com
dschwarz@khhte.com
dho@khhte.com
grapawy@khhte.com
ashen@khhte.com

*Counsel for The Bank of New York Mellon Corporation*