**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) ) ) | |
| BANK OF NEW YORK MELLON CORP. FOREX TRANSACTIONS LITIGATION | ) ) ) ) | 12 MD 2335 (LAK) ECF Case |
| This Document Relates to: *All Cases* | ) ) ) ) | |
| UNITED STATES OF AMERICA, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 11 Civ. 6969 (LAK) |
| v. | ) ) | ECF Case |
| THE BANK OF NEW YORK MELLON and DAVID NICHOLS, | ) ) ) ) | |
| Defendants. | ) ) | |

## DEFENDANTS' MOTION FOR EMERGENCY RELIEF

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ............................................................................................................... 1

BACKGROUND ................................................................................................................. 2

ARGUMENT ....................................................................................................................... 5

    I.    THE EXECUTIVE COMMITTEE'S ONGOING INTERFERENCE WITH BNYM'S THIRD-PARTY SUBPOENAS IS WHOLLY IMPROPER ............................................................................................. 5

    II.   THIS COURT'S IMMEDIATE INTERVENTION IS REQUIRED TO AVOID FURTHER PREJUDICE TO BNYM ................................................ 10

    III.  PLAINTIFFS' CONDUCT IS SANCTIONABLE ............................................... 13

CONCLUSION .................................................................................................................. 14

## TABLE OF AUTHORITIES

**Cases**

*Alson v. West 88th Garage LLC*, No. 11-cv-8317, 2012 WL 6629051
 (S.D.N.Y. Oct. 9, 2012) ...................................................................................................6

*Application of Chevron Corp., In re*, 736 F. Supp. 2d 773 (S.D.N.Y. 2010) .................................8

*Boies, Schiller & Flexner LLP, In re*, No. M8-85, 2003 WL 1831426
 (S.D.N.Y. Apr. 3, 2003)..................................................................................................13

*Brignoli v. Balch, Hardy & Scheinman, Inc.*, No. 86-cv-4103, 1989 WL 146767
 (S.D.N.Y. Dec. 1, 1989)....................................................................................................6

*Carolina Materials, LLC v. Continental Cas. Co.,* No. 08-cv-158, 2010 WL 317785
 (W.D.N.C. Jan. 19, 2010) ...............................................................................................13

*Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991)...........................................................................13

*Fox Indus., Inc. v. Gurovich*, No. 03-cv-5166, 2006 WL 2882580
 (E.D.N.Y. Oct. 6, 2006) ..........................................................................................6, 7, 14

*Melgarejo v. 24 Hour Prof'l Janitorial Servs.*, No. 07-cv-1847, 2009 WL 55705
 (N.D. Tex. Jan. 6, 2009)..............................................................................................6, 13

*Minniti, In re*, 242 B.R. 843 (Bankr. E.D. Pa. 2000) ..............................................................10, 14

*Price v. Trans Union, L.L.C.*, 847 F. Supp. 2d 788 (E.D. Pa. 2012) ....................................4, 7, 14

*Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99 (2d Cir. 2002)........................13

*Robbins & Myers, Inc. v. J.M. Huber Corp.*, No. 01-cv-201, 2011 WL 3359998
 (W.D.N.Y. Aug. 3, 2011)............................................................................................7, 14

*Sealed Case, In re*, 141 F.3d 337 (D.C. Cir. 1998)........................................................................6

*Southeastern Pa. Transp. Auth. v. The Bank of New York Mellon Corp.*,
 921 F. Supp. 2d 56 (S.D.N.Y. 2013).................................................................................3

*Teri v. Oxford Mgmt. Servs.*, No. 05-cv-2777, 2008 U.S. Dist. LEXIS 117446
 (E.D.N.Y. Sep. 30, 2008) .............................................................................................6, 7

*U.S. Bank Nat'l Ass'n v. PHL Variable Ins. Co.*, No. 12-cv-6811, 2012 WL 5395249
 (S.D.N.Y. Nov. 5, 2012) ..................................................................................................8

*United States v. Bank of New York Mellon*, --- F. Supp. 2d ---, 2013 WL 1749418
 (S.D.N.Y. 2013)..........................................................................................................3, 11

*Universitas Educ., LLC v. Nova Grp., Inc.*, No. 11-cv-1590, 2013 WL 57892
   (S.D.N.Y. Jan. 4, 2013) ................................................................................................... 8

*Williams v. Keenan*, 106 F.R.D. 565 (D. Mass. 1985) ........................................................ 6

**Rules**

Fed. R. Civ. P. 45 ................................................................................................... 1, 4, 6, 7

**Other Authorities**

American Bar Ass'n, Model Rule 3.4 cmt. 1 ..................................................................... 10

American Bar Ass'n, Model Rule 4.2 ................................................................................ 10

9A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* (3d ed. 2008) .......... 8

**INTRODUCTION**

The Bank of New York Mellon ("BNYM") respectfully requests that this Court, pursuant to its inherent power to manage its affairs, issue appropriate relief remedying the serious litigation misconduct of Plaintiffs' Executive Committee. On October 30, 2013, the Executive Committee unilaterally contacted 127 third parties on which BNYM had served subpoenas and advised them that "you are not required to produce any documents" responsive to several requests in those subpoenas. The Executive Committee's conduct – which amounts to an effort to induce subpoena recipients to defy a valid court order – is sanctionable under well-settled precedent. Not only did the Executive Committee have no right to counsel those third parties on their compliance obligations, but they falsely informed those third parties that Judge Cott's order denying BNYM's motion to compel in the Securities Case "specifically held" that "you are not required to produce" broad categories of documents.[1] Those misstatements were intended to impede BNYM from obtaining evidence that is critical to its defense in the DOJ Action and the Customer Cases. That is not just a violation of Rule 45; it undermines the integrity of this litigation and the adversarial process. Such sharp and unfair practices merit a strong and unequivocal rebuke from this Court.

Since BNYM first became aware of the Executive Committee's unlawful communications, it has received numerous inquiries from recipients of its third-party subpoenas, including several who had previously agreed to produce responsive documents. Many of these subpoena recipients have advised BNYM that they intend to withhold production of all

---

[1] The Securities Case refers to *Louisiana Municipal Police Employees' Retirement System v. The Bank of New York Mellon Corp.*, No. 11-cv-9175. The other cases in which BNYM's subpoenas seek documents are *United States v. Bank of New York Mellon*, No. 11-cv-6969 ("DOJ Action"); *Southeastern Pa. Transp. Auth. v. The Bank of New York Mellon Corp.*, No. 12-cv-3066, *Ohio Police & Fire v. The Bank of New York Mellon Corp.*, No. 12-cv-3470, and *International Union of Operating Engineers, Stationary Engineers Local 39 Pension Trust Fund v. The Bank of New York Mellon Corporation*, No. 12-cv-3067 (collectively, "Customer Cases"); and *Carver v. The Bank of New York Mellon*, No. 12-cv-9248 ("ERISA Case").

documents pending clarification from this Court.  The Executive Committee thus has stoked discovery disputes that did not previously exist, interfered with BNYM's efforts to build its defense, and more fundamentally, arrogated to itself the powers of the federal judiciary to adjudicate the enforceability of BNYM's lawful subpoenas.   Accordingly, the Executive Committee should be enjoined from all further interference with BNYM's third-party subpoenas, and it should be ordered immediately to send letters retracting its prior letters, acknowledging that it misrepresented Judge Cott's order, and stating that its prior communications were improper.  BNYM further reserves its right to seek sanctions and other appropriate relief following adjudication of this emergency motion, Plaintiffs' motion for a protective order (Dkt. No. 304), and BNYM's forthcoming appeal of Judge Cott's order.

## BACKGROUND

The Executive Committee's improper conduct was designed to compromise BNYM's ability to defend itself in these proceedings.  Between March 2012 and May 2013, the Department of Justice ("DOJ") served approximately 234 subpoenas on third parties that were either custody customers of BNYM or investment managers that had been retained to manage those clients' global portfolios.  Following the July 22, 2013 conference during which this Court established a pretrial schedule for these proceedings, BNYM served subpoenas on approximately 127 third parties, nearly all of which had previously been subpoenaed by the DOJ.   Moreover, the vast majority of those third parties were either specifically named in the DOJ Complaint or had executed foreign exchange transactions on behalf of entities named therein.[2]  In light of this Court's instruction that discovery produced in any of the MDL cases or the DOJ Action would be deemed produced in all the cases, BNYM's subpoenas bore both the MDL and the DOJ case

---

[2] Other recipients included the managers that executed foreign exchange transactions on behalf of the named plaintiffs in the Customer or ERISA cases or in the California False Claims Act litigation, as well as consultants that worked for the named plaintiffs.

captions. BNYM's subpoenas sought the production of documents omitted from DOJ's subpoenas, as well as discovery directed specifically to the issues in the Customer Cases, the ERISA Case, and the Securities Case.

Among the critical discovery requested by the subpoenas are documents reflecting the recipients' understanding of standing instruction pricing, the benefits conferred by standing instruction programs, the meaning of "best execution," and whether custodial banks owe fiduciary or best-execution duties in executing foreign exchange transactions. In its prior opinions, this Court has already found that these issues are central to the resolution of this litigation and are thus appropriate subjects for discovery.[3]

Since issuing its third-party discovery, BNYM has engaged in the usual back-and-forth negotiations with counsel representing the recipients. BNYM has worked cooperatively with counsel to balance its need for information against the cost and inconvenience that production will impose on third parties. *See* Declaration of Joseph S. Hall ("Hall Decl."), ¶ 3. Numerous recipients have either produced responsive documents or agreed to do so. *Id.* ¶¶ 3-4. As the Executive Committee well knows, BNYM has obtained numerous responsive documents that strongly support its defenses. Exs. 1-3.[4] Of course, other third-party recipients have served objections, and BNYM has attempted to address any concerns about overbreadth and burden, including by narrowing the scope of subpoenas where appropriate. Hall Decl. ¶ 3.

---

[3] *See United States v. Bank of New York Mellon*, --- F. Supp. 2d ---, 2013 WL 1749418, at *18 (S.D.N.Y. 2013) (recognizing that "best execution" may turn on "qualitative factors of execution" justifying BNYM's alleged "price spreads") ("*DOJ Action*"); *Southeastern Pa. Transp. Auth. v. The Bank of New York Mellon Corp.*, 921 F. Supp. 2d 56, 75 n.106 (S.D.N.Y. 2013) ("*SEPTA*") (making clear that SEPTA has only pleaded a "plausible claim" that the marketing website containing the "best execution" representation was part of the relevant contract between the parties, and that "[n]one of this should be read as a conclusion that SEPTA will survive summary judgment"); *id.* at 78 n.119 ("construction of a disputed term such as 'best execution standards' [is] best left to a motion for summary judgment after discovery has been conducted") (citation omitted).

[4] All exhibits are attached to the accompanying declaration of Joseph S. Hall.

3

By contrast, BNYM's efforts with respect to *party* discovery have been less successful. After failing to resolve the outstanding issues in meet-and-confer sessions, BNYM filed two separate motions to compel against named plaintiffs in the Customer Cases (the "Customer Motion," Dkt. No. 284) and in the Securities Case (the "Securities Motion," Dkt. No. 283). This Court referred both Motions to Magistrate Judge Cott. *See* Dkt. No. 287.

After BNYM filed these motions, on October 10, 2013 – without notice to BNYM – counsel for Securities Plaintiffs sent letters to two recipients of BNYM Rule 45 subpoenas advising them that Judge Cott's ruling "will significantly impact the categories and date range of documents that [the third party] will need to produce in response to the subpoena." Exs. 6-7. Counsel sent a similar letter to a third subpoena recipient on October 15, 2013. *See* Ex. 8. On October 14, 2013, after receiving an inquiry from one of the contacted subpoena recipients, BNYM asked counsel for Securities Plaintiffs for a copy of any correspondence with its Rule 45 subpoena recipients. *See* Ex. 9 at 3.[5]

On October 24, 2013, Judge Cott granted in part and denied in part the Customer Motion, and denied the Securities Motion. *See* Dkt. No. 299 ("Order").[6] On October 25, 2013, the Executive Committee sent a letter to BNYM demanding, in light of Judge Cott's order, that BNYM withdraw *all* of its subpoenas. *See* Ex. 12. BNYM responded by letter dated October 28, 2013, advising that it is unlawful to advise non-party subpoena recipients of their compliance obligations, and referring counsel to *Price v. Trans Union, L.L.C.*, 847 F. Supp. 2d 788, 794 (E.D. Pa. 2012). *See* Ex. 13. In that letter, and in another dated October 30, 2013, *see* Ex. 16, BNYM reiterated its request that Plaintiffs produce all correspondence with subpoena recipients.

---

[5] Counsel for Securities Plaintiffs ignored BNYM's request for such correspondence on multiple occasions. *See* Exs. 9-11.

[6] BNYM will separately be seeking review of Magistrate Judge Cott's opinion, which is inconsistent with this Court's prior opinions.

On October 30, 2013, notwithstanding BNYM's admonition, the Executive Committee sent letters to all 127 recipients of BNYM subpoenas issued in the DOJ Action and MDL cases. The Executive Committee advised each subpoena recipient that Judge Cott "specifically held" that documents concerning the following categories were "not required to be produced": "(1) the foreign exchange practices of and foreign exchange transactions conducted by banks other than BNYM; (2) the term 'best execution,' except as used by BNYM; and (3) investments in securities other than BNYM common stock." Ex. 4. The Executive Committee then proceeded to counsel non-compliance with BNYM's subpoenas, instructing recipients that "[p]ursuant to" Judge Cott's order, "you are not required to produce any documents responsive to the categories set forth above." *Id.* For a subset of third parties relevant to the Securities Action, the Executive Committee's letters further stated that recipients were "not required to produce documents for the entire time period requested in the subpoena." Ex. 4.1.

On October 30, 2013, BNYM informed Plaintiffs that it intended to appeal Judge Cott's order. *See* Ex. 14. It further reminded Plaintiffs that advising recipients of BNYM's subpoenas was inappropriate and reserved all of BNYM's rights in that regard. *Id.* The Executive Committee did not inform BNYM that it had actually sent letters to all 127 subpoena recipients until late in the afternoon of October 31, 2013. *See* Ex. 15. Later that evening, BNYM requested that the Executive Committee immediately rescind its letters. *See* Ex. 16. The Executive Committee refused.

### ARGUMENT

I. **THE EXECUTIVE COMMITTEE'S ONGOING INTERFERENCE WITH BNYM'S THIRD-PARTY SUBPOENAS IS WHOLLY IMPROPER**

It is a fundamental tenet of federal practice that a civil document subpoena is a valid and binding judicial order issued by the federal district court with jurisdiction over the subpoena

5

recipient. *See In re Sealed Case*, 141 F.3d 337, 341 (D.C. Cir. 1998).[7] It is thus unlawful for an "adversary of the party seeking the information [to] advise, no matter the reasons, the person commanded by the subpoena to produce the information to ignore the subpoena's command." *Price*, 847 F. Supp. 2d at 794. Such conduct is little different from a party soliciting contempt of a valid court order. *See Alson v. West 88th Garage LLC*, No. 11-cv-8317, 2012 WL 6629051, at *1 (S.D.N.Y. Oct. 9, 2012) (finding contempt for violation of Rule 45 subpoena and holding that a "[c]ourt order [is] not [a] necessary condition precedent to holding [a] witness in contempt for disobeying subpoena; subpoena itself is [a] Court Order"). It constitutes not only "wrongful[] interfere[nce]" with the subpoena process, *Teri v. Oxford Mgmt. Servs.*, No. 05-cv-2777, 2008 U.S. Dist. LEXIS 117446, at *24 (E.D.N.Y. Sept. 30, 2008), but also a "usurp[ation of] the authority of the court," which has the sole power to "rule on the validity of subpoenas and to direct the recipients to comply or not comply." *Fox Indus., Inc. v. Gurovich*, No. 03-cv-5166, 2006 WL 2882580, at *8 (E.D.N.Y. Oct. 6, 2006).[8]

The Executive Committee flagrantly defied that rule here. After BNYM warned the Executive Committee that advising third-party subpoena recipients not to comply would be unlawful, *see* Ex. 13, the Executive Committee nevertheless proceeded to instruct those recipients to withhold documents critical to BNYM's defense. *See* Ex. 4 ("[Y]ou are not required to produce any documents responsive to the categories set forth above."). And it based

---

[7] *See also Williams v. Keenan*, 106 F.R.D. 565, 567 (D. Mass. 1985) (subpoena "is, in itself, a Court Order commanding the deponent to produce the documents specified therein").

[8] *See also Melgarejo v. 24 Hour Prof'l Janitorial Servs.*, No. 07-cv-1847, 2009 WL 55705, at *1 (N.D. Tex. Jan. 6, 2009) ("To the extent that Defendants have already interfered with timely compliance, Defendants should take corrective action to remedy that situation and should take no further steps to prevent third parties from complying with the subpoenas issued by Plaintiff."); *Brignoli v. Balch, Hardy & Scheinman, Inc.*, No. 86-cv-4103, 1989 WL 146767, at *9 (S.D.N.Y. Dec. 1, 1989) (improper for attorney to "advise[]" third parties "that they did not need to comply with defense counsel's subpoenas").

6

that improper advice on a blatant mischaracterization of Judge Cott's order, which addressed a dispute concerning *party* production of different documents in a different case.

The Executive Committee's defiance of Rule 45 – which was intended to deprive BNYM of documents that might help its defense – was clearly improper. *First*, the Committee "arrogated to [itself] a power assigned to the Court under [Rule 45]." *Price*, 847 F. Supp. 2d at 794. BNYM's subpoenas were valid and binding judicial orders, and whatever Plaintiffs' legal objections to those subpoenas, it is for the court that issued them – not Plaintiffs' counsel – to determine their validity. *Id.*; *see Fox Industries*, 2006 WL 2882580, at *8 (advising subpoena recipients on compliance obligations "usurp[s] the authority of the court"). The Executive Committee's (erroneous) belief that Judge Cott adjudicated the discovery obligations of third parties does not affect that conclusion: if it had "objections to [the] materials sought, [its] proper course should have been a motion to quash the subpoena." *Teri*, 2008 U.S. Dist. LEXIS 117446, at *24.[9] "The action [it] did take" – instead counseling the recipients simply to disobey the subpoenas without obtaining any relief from any court – "wrongfully interfered" with judicial authority and manifests "willful, or at best, grossly negligent" misconduct. *Id.*; *see Robbins & Myers, Inc. v. J.M. Huber Corp.*, No. 01-cv-201, 2011 WL 3359998, at *2 (W.D.N.Y. Aug. 3, 2011) (party's letters "directing recipient not to comply" with subpoenas based on a separate court order was improper "attempt to thwart the litigation process") (internal quotations omitted).

*Second*, the Executive Committee's desire to gain a litigation advantage by impeding BNYM from obtaining exculpatory evidence hardly provides them with any legitimate interest in the scope of BNYM's subpoenas. "In the absence of a claim of privilege a party usually does

---

[9] After receiving BNYM's October 31, 2013 letter (Ex. 15), Plaintiffs belatedly filed a motion for a protective order. *See* Dkt. No. 304. That belated effort to obtain relief from this Court makes their previous interference with BNYM's subpoenas all the more indefensible. The Executive Committee sought judicial relief only *after* instructing the 127 subpoena recipients to ignore BNYM's subpoenas and only after it become apparent that BNYM was going to bring their improper conduct to the attention of this Court.

not have standing to object to a subpoena directed to a non-party witness." *In re Application of Chevron Corp.*, 736 F. Supp. 2d 773, 779 n.20 (S.D.N.Y. 2010) (Kaplan, J.) (internal quotations omitted).[10] The Committee asserts no such privilege here. Rather, its apparent purpose was to deprive BNYM of exculpatory evidence by arguing that the documents BNYM seeks are "irrelevant and not required to be produced." Ex. 4. But the asserted relevance of the documents that BNYM seeks from third parties is of no legitimate concern to Plaintiffs at the discovery stage. *See Universitas Educ., LLC v. Nova Grp., Inc.*, No. 11-cv-1590, 2013 WL 57892, at *5 (S.D.N.Y. Jan. 4, 2013) ("A party lacks standing to challenge subpoenas issued to non-parties on the grounds of relevancy or undue burden."). Although Plaintiffs are free to object to documents concerning "best execution" at trial, the Executive Committee's attempt to bypass this Court and prevent BNYM even from obtaining such documents was wholly unlawful.

*Third*, the Executive Committee made matters worse by misrepresenting Judge Cott's order. Indeed, the Committee's statement to third parties that Judge Cott had held that "you are not required to produce" documents was simply false. Contrary to that assertion, Judge Cott expressly assumed that BNYM *would* be able to obtain many of the requested documents *from third parties*. As Judge Cott stated (at 3), he found the Customer Plaintiffs' limited document production was adequate, in part, because "third-party discovery" should provide BNYM an "[]adequate supplement" to that production. Judge Cott's order thus did not even suggest – let alone "specifically h[o]ld" – that his order should be applied to restrict the scope of BNYM's subpoenas. The Executive Committee's assertion to the contrary was false.

---

[10] *See also U.S. Bank Nat'l Ass'n v. PHL Variable Ins. Co.*, No. 12-cv-6811, 2012 WL 5395249, at *2 (S.D.N.Y. Nov. 5, 2012) (collecting cases); 9A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2549 (3d ed. 2008) ("Ordinarily a party has no standing to seek to quash a subpoena issued to someone who is not a party to the action, unless the objecting party claims some personal right or privilege with regard to the documents sought.").

Worse still, the Executive Committee's letters misrepresented Judge Cott's order by suggesting that it governed the scope of discovery in all the cases in this MDL when, in fact, Judge Cott was clear that the portions of the Order cited by the Executive Committee addressed a dispute arising specifically in "the case captioned *Louisiana Municipal Police Employees' Retirement System v. The Bank of New York Mellon Corp.*" Order at 1. Indeed, Judge Cott denied the motion in the Securities Case based on factors unique to that litigation – namely, his view that the documents BNYM sought were irrelevant to securities-fraud claims, and his view that Securities Plaintiffs would incur "significant burdens" responding to BNYM's requests. *Id.* at 5. Contrary to the Executive Committee's assertions, those findings do not apply to BNYM's subpoenas, which seek documents from different parties with respect to different cases that assert different claims.[11] Indeed, Judge Cott's order itself contemplates a broader scope of discovery in the Customer Cases than in the Securities Case.[12] But the Executive Committee's letters elided all those distinctions and flatly stated that Judge Cott "specifically held" that third parties need not produce documents. That misleading characterization makes the Committee's interference with BNYM's subpoenas – improper under any circumstances – simply indefensible.

---

[11] Because third parties possess different documents from those in the possession of Securities Plaintiffs, the "burden" on Securities Plaintiffs that Judge Cott found associated with BNYM's requests may well be non-existent. Moreover, the other cases involve broader claims to which the documents BNYM seeks are clearly relevant. Unlike the Securities Plaintiffs, the Customer Plaintiffs assert a breach-of-contract claim alleging that the third-party investment managers on whom BNYM served subpoenas signed contracts requiring BNYM to provide "best execution" on foreign exchange transactions with Plaintiffs. *See* Dkt. No. 262, at ¶¶ 217-22. Whatever the merits of Judge Cott's ruling on the relevance of "best execution" to a securities-fraud claim, this Court has squarely held that documents BNYM seeks are relevant to the Customer Plaintiffs' breach-of-contract claim. *See SEPTA* at 78 & n.119 (the "proper construction" of "an oft-used industry pricing term" like "best execution" is "best left to a motion for summary judgment after discovery").

[12] *Compare* Order at 3 (declining to order Securities Plaintiffs to produce documents reflecting a "'subjective understanding of foreign-exchange pricing'"), *with id.* at 2-3 (ordering Customer Plaintiffs to produce documents in part because they "provide insight into Plaintiffs' evaluation of FX capabilities as well as their understanding of industry practices generally").

*Fourth*, in a number of cases the Executive Committee improperly provided legal advice about Judge Cott's order to third parties that it knew were represented by separate counsel.[13] Such conduct raises serious concerns under the Rules of Professional Conduct. *See* American Bar Ass'n, Model Rule 4.2 ("a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter"); *In re Minniti*, 242 B.R. 843, 848 (Bankr. E.D. Pa. 2000) (awarding sanctions in part because subpoena interference "implicate[s]" "a number of Rules of Professional Conduct"). Those ethical concerns render the Executive Committee's interference with BNYM's third-party discovery even more improper.

## II.   THIS COURT'S IMMEDIATE INTERVENTION IS REQUIRED TO AVOID FURTHER PREJUDICE TO BNYM

The Executive Committee's improper efforts to interfere with BNYM's third-party discovery and thereby deprive BNYM of documents essential to its defense require an immediate and unequivocal response from this Court. Indeed, the Executive Committee's *ex parte* communications to subpoena recipients has already caused, and unless immediately withdrawn will continue to cause, irreparable harm to BNYM.

The Executive Committee's infringement of BNYM's right to obtain relevant evidence from third parties threatens the basic fairness of this proceeding and is fundamentally inconsistent with our adversary system.[14] Over the course of several months, BNYM has been

---

[13] With respect to (at least) 11 of the subpoena recipients, the Executive Committee addressed their letters either to the subpoena recipient itself or to a specific employee of that recipient, despite the fact that BNYM had already served communications on the Executive Committee making clear that those entities were represented by outside counsel. *See* Hall Decl. ¶ 8, Ex. 5 (chart detailing each of those 11 instances).

[14] *See* American Bar Ass'n, Model Rule 3.4 cmt. 1 ("The procedure of the adversary system contemplates that the evidence in a case is to be marshalled competitively by the contending parties. Fair competition in the adversary system is secured by prohibitions against destruction or concealment of evidence, improperly influencing witnesses, obstructive tactics in discovery procedure, and the like.").

diligently negotiating the scope of its subpoenas with the individual recipients. Several recipients have made substantial productions, which include documents that directly undermine Plaintiffs' claims that BNYM's customers were misled by BNYM's standing instruction pricing. For instance, one investment manager expressed skepticism about the merits of Plaintiffs' allegations, stating that ████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████ *See* Ex. 1 (emphasis added). Moreover, ██████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████ *See id*.

Other documents in these third-party productions likewise belie Plaintiffs' claims that BNYM's representation about "best execution" required it to price standing instruction transactions at its own cost of funds. For example, ████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████ *See* Ex. 2 at 1. ████████████████████

████████████████████████████████████████████████████████████████

████████ *Id.* at 2. That supports BNYM's position on an issue that this Court has already recognized as a proper subject for summary judgment. *DOJ Action* at *18 (noting "it may prove correct" that "best execution" "incorporates certain qualitative factors of execution").

Moreover, BNYM has obtained a presentation ████████████████████████████

████████████████████████████████████████████████████████████████

11

███████████████████████████████████████████████

████████████████████████████████ Ex. 3 at 11.  The presentation also states that ██████

██████████████████████████████████████████████

████████████████████████████████████ *Id.* at 8.  BNYM expects that many third parties will possess similar documents.  But were subpoena recipients to follow the advice of the Executive Committee, BNYM would be unable to obtain such documents.

Because BNYM has promptly shared all third-party productions with the parties in the MDL, the Executive Committee was fully aware that BNYM's subpoenas have yielded documents that refute their allegations.  Their recent letters to subpoena recipients are nothing more than sharp practices designed to prevent BNYM from obtaining additional evidence.  And, not surprisingly, the Executive Committee's efforts to prejudice BNYM's defense are already bearing fruit, as they have brought to a standstill BNYM's painstaking multi-month effort to individually negotiate compliance with its 127 separate subpoenas.  Indeed, BNYM has already fielded inquiries from four subpoena recipients raising concerns about their obligations in light of the Executive Committee's letters.  *See* Hall Decl. ¶ 6.  Three explicitly informed BNYM that they will not produce *any* documents in response to the subpoena because of the inaccurate statements made in the Executive Committee's letters.  *Id.* ¶ 7.

As those letters were sent in hard copy less than a week ago, BNYM expects a flood of additional inquiries and new objections.  The Executive Committee has represented to each third-party subpoena recipient that BNYM's existing requests are unlawful, and that representation – by attacking BNYM's credibility – makes it less likely that third parties will produce the documents that they otherwise would have voluntarily provided.  Unless the Executive Committee's letter is withdrawn and it is ordered to provide a full retraction and admission of

12

wrongdoing, BNYM will likely be required to litigate its subpoenas individually in courts throughout the country,[15] which threatens BNYM with significant expense and delays in its ability to prepare a timely defense.

### III.     PLAINTIFFS' CONDUCT IS SANCTIONABLE

BNYM's primary concern is in obtaining emergency relief that redresses Plaintiffs' ongoing obstruction of its litigation strategy. But the serious misconduct of the Executive Committee merits a significant rebuke. This Court has the "inherent power to manage its own affairs," which includes the authority to fashion an appropriate remedy for any "misconduct in discovery." *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 107 (2d Cir. 2002); *see also Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991). BNYM requests that it immediately exercise that authority and direct the Executive Committee to cease from any further interference with BNYM's third-party discovery. It should also order the Executive Committee to "take corrective action to remedy" the damage that they have already caused. *Melgarejo*, 2009 WL 55705, at *1; *see Carolina Materials, LLC v. Continental Cas. Co.,* No. 08-cv-158, 2010 WL 317785, at *3 (W.D.N.C. Jan. 19, 2010) (ordering plaintiff to "cease interference" with adversary's subpoena).

Specifically, BNYM requests that this Court order the Executive Committee to:

- Send a letter to each subpoena recipient retracting its prior communications and include the following:
    - Acknowledge that the Executive Committee's previous efforts to counsel the recipient about its response to BNYM's subpoenas were improper;
    - Advise each subpoena recipient that the Executive Committee's previous letter misrepresented the scope of Judge Cott's order; and

---

[15] Although there is case law in this district holding that this Court has the power under Section 1407 to enforce a subpoena *duces tecum* that was issued in "any district," *In re Boies, Schiller & Flexner LLP*, No. M8-85, 2003 WL 1831426, at *1 (S.D.N.Y. Apr. 3, 2003), non-parties will nonetheless likely file motions in the district from which the subpoena originally issued, forcing BNYM to litigate any transfer motions in those districts.

- - o Advise each subpoena recipient that BNYM's outstanding subpoenas have not been found by any court to be unduly burdensome, overbroad, or to seek irrelevant information;
- Cease and desist from any future communications with any subpoena recipient with respect to its compliance with BNYM's subpoenas;
- Comply with all legal and ethical rules applicable to communications with represented parties; and
- Produce all information regarding any communications with a third party with respect to BNYM's subpoenas.

Extending this relief to BNYM on an emergency basis is well within this Court's discretion. Courts routinely hold that interference with third-party subpoenas is sanctionable. *See Price*, 847 F. Supp. 2d at 794 (counsel that "attempt[s] to 'quash' the subpoenas" through communications with recipients "arrogate[s] to himself a power assigned to the Court. The violation is clear and it is sanctionable."). In such circumstances, courts have awarded the opposing party its costs, *Minniti*, 242 B.R. at 850; required the offending party to pay attorneys' fees, *Fox Industries*, 2006 WL 2882580, at *14; and imposed fines "as a penalty for such improper interference," *Robbins*, 2011 WL 3359998, at *3.

The Executive Committee's serious misconduct here fully justifies the relief BNYM is seeking. It also merits the imposition of sanctions and other remedies, which BNYM reserves the right to seek once the record is more fully developed.

## CONCLUSION

BNYM respectfully requests that this Court grant BNYM's request for emergency relief.

14

Dated:  November 4, 2013　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　THE BANK OF NEW YORK MELLON

　　　　　　　　　　　　　　　　　　　　　/s/ Reid M. Figel
　　　　　　　　　　　　　　　　　　　　　Reid M. Figel (RF-8663)
　　　　　　　　　　　　　　　　　　　　　Rebecca A. Beynon (*pro hac vice*)
　　　　　　　　　　　　　　　　　　　　　David L. Schwarz (*pro hac vice*)
　　　　　　　　　　　　　　　　　　　　　Derek T. Ho (DH-0104)
　　　　　　　　　　　　　　　　　　　　　Gregory G. Rapawy (*pro hac vice*)
　　　　　　　　　　　　　　　　　　　　　Andrew C. Shen (AS-7963)
　　　　　　　　　　　　　　　　　　　　　KELLOGG, HUBER, HANSEN, TODD,
　　　　　　　　　　　　　　　　　　　　　　EVANS & FIGEL, P.L.L.C.
　　　　　　　　　　　　　　　　　　　　　1615 M Street, NW, Suite 400
　　　　　　　　　　　　　　　　　　　　　Washington, DC 20036
　　　　　　　　　　　　　　　　　　　　　Telephone:  (202) 326-7900
　　　　　　　　　　　　　　　　　　　　　Facsimile:  (202) 326-7999
　　　　　　　　　　　　　　　　　　　　　rfigel@khhte.com
　　　　　　　　　　　　　　　　　　　　　rbeynon@khhte.com
　　　　　　　　　　　　　　　　　　　　　dschwarz@khhte.com
　　　　　　　　　　　　　　　　　　　　　dho@khhte.com
　　　　　　　　　　　　　　　　　　　　　grapawy@khhte.com

　　　　　　　　　　　　　　　　　　　　　*Counsel for The Bank of New York Mellon*