**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | ) | |
|---|---|---|
| In re: | ) | |
| | ) | |
| BANK OF NEW YORK MELLON CORP. | ) | 12 MD 2335 (LAK) |
| FOREX TRANSACTIONS LITIGATION | ) | |
| | ) | |
| | ) | |
| This Document Relates to: | ) | |
| | ) | |
| *Southeastern Pennsylvania Transportation* | ) | 12 Civ. 3066 (LAK) |
| *Authority v. The Bank of New York Mellon Corp.* | ) | |
| | ) | |
| | ) | |
| | ) | |

**REPLY IN SUPPORT OF THE BANK OF NEW YORK MELLON'S, THE BANK OF NEW YORK MELLON TRUST COMPANY, N.A.'S, AND MELLON BANK, N.A.'S, RENEWED MOTION TO COMPEL AND FOR SANCTIONS PURSUANT TO <u>FEDERAL RULE OF CIVIL PROCEDURE 37(b)(2)</u>**

The Bank of New York Mellon, The Bank of New York Mellon Trust Company, N.A., and Mellon Bank, N.A. (collectively, "BNYM") respectfully submit this reply in support of their renewed motion to compel the production of documents, and for sanctions pursuant to Fed. R. Civ. P. 37(b)(2) against Plaintiff Southeastern Pennsylvania Transportation Authority ("SEPTA").

SEPTA's opposition confirms that it is engaged here in semantic gamesmanship designed to avoid production of undeniably relevant documents that this Court has already ordered it to produce. SEPTA does not deny that its investment consultant, Gray & Company, ███████████████████████████████████████████████████████████████████████████ ███████████████, that it has not produced these documents, and that it has refused to even reach out to its investment managers to inquire about their production. That should be the end of the matter. SEPTA's argument that these questionnaires are not technically RFPs is not remotely credible, given that ████████████████████████████████████████████████; Gray & Company itself referred to them as "Request[s] for Proposal" on its website; ████ ████████████████████████████████████████████, and given SEPTA's representation to the Court, in an effort to avoid further discovery obligations, that it would "produce all responses to RFPs by investment managers with a global mandate who were ultimately retained, as those responses led to a contractual relationship between Plaintiffs and those investment managers." Dkt. No. 288, at 1. But in all events, labels are not dispositive: whether or not they are called "RFPs," these documents are responsive and should be produced for the reasons set forth in this Court's October 24 Order. SEPTA's refusal to produce these documents despite this Order and on such clearly unsupportable grounds warrants this Court's rebuke in the form of monetary sanctions.

*1.* SEPTA's defense for its conduct boils down to the singular contention that it never issued "RFPs" to investment managers. But, BNYM has already identified the specific documents that constitute these RFPs, and which therefore fall squarely within the scope of the October 24 Order. These are the same documents that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" *see* Branson Mot. Decl., Exs. 8, 17-19; that SEPTA's investment consultant, Gray & Company, issued on behalf of specific clients and which were referred to on its website as a "Request for Proposal," *see id.*, Ex. 21; that SEPTA is forced to concede (at 18) are, in form and substance, nearly identical to the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, *see* Mot. at 9-11; and that SEPTA's counsel represented to the Court, in no uncertain terms, that it would produce in an effort to escape further discovery obligations, *see* Dkt. No. 288.

SEPTA would have this Court believe, however, that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ when its own investment consultant refers to the documents sought by this motion as "Request[s] for Proposal," and when its own outside counsel represented to the Court that it would "produce all responses to RFPs by investment managers with a global mandate," every one of those entities was using the term "RFP" "loosely," as "shorthand" or as a "misnomer." Opp. at 9, 15. Of course, SEPTA can offer no support for any such contention. Its brief does not attach a sworn affidavit from any of its current or former employees or from any of the three investment consultants (including Gray & Company) that it retained during the relevant period attesting to its veracity. And, while SEPTA asserts (at 15) that its Pension Committee "loosely used the term 'RFP'" to refer generically to the search process for investment managers, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

2



Thus, as reflected in SEPTA's own documents, an "RFP", which is a physical document, is distinct from the more general "search process."

The fact of the matter is that SEPTA has admitted that the specific documents sought by this motion were used by SEPTA, or investment consultants acting on SEPTA's behalf, to solicit detailed quantitative and qualitative information from specific investment managers "as part of [the] internal due diligence" process of selecting SEPTA's investment managers. *Id.*, Ex. 13. These are RFPs by the plain meaning of that term. *See* Mot. at 11 n.12 (citing cases). SEPTA's Pension Committee, its investment consultants, and even its outside counsel recognized as much, and never took a contrary position until after BNYM inquired into why SEPTA had not produced the Court-ordered documents.

   ***2.*** SEPTA's invented excuses for violating this Court's order are all unconvincing. *First,* SEPTA attempts to distinguish the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, *see* Branson Mot. Decl., Ex. 20, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ were "neither issued by, nor specific to SEPTA." Opp. at 13 n.8.  *See id.* at 14 (conceding that "its consultants would have been responsible for actually issuing RFPs to prospective investment managers if indeed they had been issued."); Nirmel Opp. Decl., Ex. A at 7 ▮▮▮

3

███████████████████████████████████

███████████████████████████████████

████████████████████████████. These "formal questionnaires" were issued on SEPTA's behalf, and under basic principles of agency law, SEPTA is charged with the knowledge of Gray & Company relating to those investment manager searches. *See Veal v. Geraci*, 23 F.3d 722, 725 (2d Cir. 1994) (citing Restatement (Second) of Agency ¶¶ 9(3) 268, 272, 275 (1958)). Moreover, the issue of whether SEPTA must produce RFPs in the possession of its investment consultants and managers has already been fully litigated. This Court has clearly ordered SEPTA to locate and produce all such documents regardless of where they may be "physically located." Dkt. No. 299, at 2 n.1.[1]

Furthermore, as ████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

██████████████████████████████████ Indeed, the "Request for Proposals" that appeared on Gray & Company's website – which are materially identical to the ███████████████ produced by SEPTA – were issued by Gray & Company

---

[1] For this same reason, the fact that SEPTA may have produced the "written materials that SEPTA's Pension Committee used to evaluate investment managers" is immaterial. Opp. at 8 (emphasis omitted). SEPTA's investment consultants were tasked with the duty of selecting investment managers, and accordingly possess documents – including RFPs – that may not have been provided to SEPTA's Pension Committee.

4

*on behalf of* specific clients.  *See id.*, Ex. 21 (showing formal questionnaire or "Request for Proposal" issued by Gray & Company on behalf of Chicago Transit Authority Retiree Health Care Trust."). These documents therefore refute SEPTA's unsupported contention that the ▮▮▮▮▮▮▮▮▮▮ sought general information completely untethered to any client's specific investment manager search.

*Second*, SEPTA claims (at 10) that it has "confirmed" with Gray & Company that it did not issue RFPs on SEPTA's behalf.  But SEPTA was only in the initial stages of conferring with Gray & Company to determine if any of its retained investment managers received and responded to the "formal questionnaire" when it abruptly stopped those inquiries, claiming that the subpoena that BNYM served on Gray & Company on January 16, 2014 precluded all further communications.  *See* Branson Mot. Decl., Ex. 16 at 2.  Although BNYM informed SEPTA that it had no objection to any further communications necessary to comply with this Court's order, and in fact specifically requested that SEPTA seek Gray & Company's assistance to track down and produce the "formal questionnaires," SEPTA refused.  *Id.*[2]  SEPTA further refused to even contact its retained investment managers to inquire about and obtain these same documents.  Thus, contrary to its assertions to this Court, SEPTA has actually *refused* to confirm its claim that "formal questionnaires" were not sent to SEPTA's retained investment managers with a global mandate.[3]

---

[2] SEPTA's claim (at 11-12) that it "insisted that Defendants seek an exception to the injunction [set by the November 15 Order] if they wished SEPTA to communicate with Gray & Company about potential responses to the template questionnaires" is false.  As reflected in the parties' contemporaneous correspondence, SEPTA never asked BNYM to file such an exception with the Court.  *See* Branson Mot. Decl., Ex. 16.  Moreover, the burden does not fall on BNYM to ensure that SEPTA complies with this Court's order.  SEPTA knows full well how to seek an exception from this Court from the November 15 Order, having done just that in a January 27, 2014 request that it be permitted to contact a third-party subpoenaed by BNYM.

[3] As explained in BNYM's opening brief, the fact that BNYM has subpoenaed certain of SEPTA's investment consultants and investment managers does not relieve SEPTA of its obligations to comply with this Court's order.  BNYM has subpoenaed three of SEPTA's managers and Gray & Company, but as of the date of this reply brief has received a document production from only one investment manager, Philadelphia International Advisors.  BNYM

5

*Third*, SEPTA's attempts to reconcile the inconsistent positions it has taken on this issue strain credibility. SEPTA asserts (at 4) that it represented during an August 23, 2013 meet and confer call that the "application of RFP-related search terms was moot because SEPTA did not issue RFPs for investment management services." This is false. None of the contemporaneous correspondence memorializing that meet and confer reflects any such representation. To the contrary, those communications reflect SEPTA's refusal to produce RFPs purely on relevancy grounds – a position that makes no sense if those documents did not exist.[4] Nor did SEPTA inform BNYM of "its understanding that it does not issue RFPs for investment management services" on the October 2, 2013 meet and confer call. *Id.* at 5. It was on this call, in fact, that SEPTA affirmatively offered to produce RFPs and responses of its retained investment managers if BNYM would agree to pull down the motion to compel that was filed a day earlier – an offer that is reflected in the parties' written correspondence on that same day and further memorialized in BNYM's October 8, 2013 reply brief in support of its motion to compel. *See* Branson Mot. Decl., Ex. 3;[5] Dkt. No. 292 ("SEPTA stated [on the October 2, 2013 call] that *all* [RFPs issued to investment managers and the responses thereto] were physically located with its investment

---

further notes that note 14 of its opening brief contained a typographical error. Consistent with the text on page 13 accompanying that note, the final sentence of that note should have stated that " . . . only Philadelphia International has made a production, and it did *not* appear to include a SEPTA RFP response."

[4] *See* Dkt. No. 288-3, at 8-9 (Aug. 28, 2013 letter memorializing the parties' August 23, 2013 meet and confer, stating that "Plaintiffs indicated that they had agreed to produce only RFPs as they relate to custodial services, and not investment-manager services. BNYM explained that RFPs for investment managers with global mandates shed light on the factors that Plaintiffs considered important to global investing, as well as the scope of investment-manager authority. They are thus relevant to (among other things) materiality, reliance, whether standing instruction service was consistent with "best execution," and damages. BNYM further explained that the California Funds have agreed to produce RFPs for investment managers that obtained a global mandate. You indicated that you would take this issue under advisement.").

[5] SEPTA's interpretation (at 7) of the October 2, 2013 e-mail is far-fetched. That e-mail reflects BNYM's counter-offer to pull down its motion to compel if SEPTA would agree to produce all investment manager RFP responses, "notwithstanding the fact that they may physically reside with SEPTA's investment advisors." The use of the term "may" does not reflect BNYM's understanding that SEPTA never in fact issued RFPs, as SEPTA now claims, but rather SEPTA's representation on that call that these documents were not in its own physical possession.

6

advisors (the entities that it used to help select investment managers) and took the position that these documents were *not* in SEPTA's possession, custody, or control."). Indeed, had SEPTA made any representation on any meet and confer call, or by any other means,[6] that it had never issued RFPs to investment managers, BNYM would not have pursued these documents in the first instance, much less moved the Court for their production.

But the Court need not accept BNYM's word on these matters. SEPTA itself stated in its October 4 opposition to BNYM's motion to compel that it had "offered to produce all responses to RFPs by investment managers with a global mandate who were ultimately retained," and further argued that the production of RFPs for investment managers that were not retained would be unduly burdensome. Dkt. No. 288, at 1-3. Its current attempt (at 5) to disclaim those statements as "specific to the Ohio Funds, not SEPTA" is disingenuous and unsupported. Nowhere in that opposition brief did SEPTA inform the Court of any distinction between SEPTA and the Ohio Funds. Indeed, had SEPTA genuinely believed that neither it, nor any of its investment consultants, ever issued RFPs to investment managers, this undoubtedly would have been SEPTA's primary argument in opposition. The Court cannot compel the production of documents that do not exist. Of course, SEPTA never advanced that argument until the November 18 document production deadline had passed. SEPTA's efforts, to this day, to mislead the Court about facts surrounding the parties' meet and confer conferences speak volumes about its conduct in this litigation.

**3.** SEPTA's refusal to produce documents by the October 24 Order warrants the imposition of monetary sanctions, which are the mildest of the sanctions authorized by Rule 37. *J. M. Cleminshaw Co. v. City of Norwich*, 93 F.R.D. 338, 349 (D. Conn. 1981).

---

[6] SEPTA contends (at 6) that its responses to BNYM's First Set of Interrogatories (Nirmel Opp. Decl., Ex. A) "explain in detail the fact that SEPTA did not issue RFPs for investment managers."

7

SEPTA attempts to escape these sanctions by arguing that BNYM "incorrectly articulates the standard of an award of attorneys' fees under Rule 37(b)(2)(C)," citing this Court's decision in *Rahman v. Smith & Wollensky Restaurant Grp., Inc.*, No. 06 Civ. 6198, 2009 WL 2169762 (S.D.N.Y. July 21, 2009) (Kaplan, J.). *Rahman*, however, addressed the standard applied when a party advances "a baseless discovery motion," not the standard that applies under Rule 37(b)(1) where, as here, a party fails to comply with a discovery order. *Id.* at *1-*2. SEPTA further suggests (at 21) that BNYM must establish that SEPTA acted with a "culpable state of mind" in order for the Court to award monetary sanctions. But, the cases it cites articulate the standard when the movant seeks far more onerous adverse inference or case dispositive sanctions, as opposed to the monetary sanctions sought by BNYM.[7]

Despite SEPTA's attempts to muddle the applicable legal standard, that standard is clear and well settled. "[A] finding of bad faith or willful misconduct is not required before the Court can award attorneys' fees" under Rule 37(b). *JSC Foreign Econ. Ass'n Technostroyexport v. International Dev. & Trade Servs., Inc.*, No. 03 Civ. 5562, 2005 WL 1958361, at *12 (S.D.N.Y. Aug. 16, 2005). Under Rule 37(b)(2)(C) "the court *must* order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." (emphasis added). *See also Hull, Inc. v. Waterbury Petroleum Prods., Inc.*, 845 F.2d 1172, 1177 (2d Cir. 1988); 8B Wright, Miller & Marcus, *Federal Practice &*

---

[7] *See Chevron Corp. v. Donziger*, No. 11-CV-0691, 2013 WL 5575833, at *41 (S.D.N.Y. Oct. 10, 2013) ("*An adverse inference* serves the remedial purpose 'of restoring the prejudiced party to the same position he would have been in absent the wrongful destruction of [or willful refusal to produce] evidence by the opposing party.'") (emphasis added; alteration in original); *In re Terrorist Attacks on Sept. 11, 2001*, No. 03 MDL 1570, 2013 WL 5788307, at *1 (S.D.N.Y. Oct. 28, 2013) (setting forth standard for when "default judgment or the imposition of adverse inference jury instructions" may be ordered due to spoliation of evidence). SEPTA also cites *In re September 11th Liability Insurance Coverage Cases*, 243 F.R.D. 114, 130 (S.D.N.Y. 2007), but that case addressed the standard for imposing sanctions under Rule 37(c)(1) where a party "fails to provide information . . . as required by Rule 26(a) or (e)" rather than monetary sanctions under Rule 37(b)(1) for failure to comply with a court order.

*Procedure: Civil 2d* § 2289, 538 (3d ed. 2010) (The 1970 amendment [to Rule 37(b)[2]] made the award [of attorneys' fees] mandatory, regardless of what other sanctions may be imposed, unless the delinquent party shows substantial justification for its failure or other circumstances making an award unjust.").

Here, SEPTA has attempted to unreasonably word-smith the language of BNYM's document request, the notes of its own Pension Committee, its representations to the Court, and this Court's prior order. It offers nothing but unconvincing *post hoc* excuses for its failure to produce, and even to inquire about, the specific documents identified by BNYM, which even SEPTA admits are relevant to this litigation. In short, there is no substantial justification for its conduct, which in similar circumstances have resulted in far more onerous sanctions. In *Louis Vuitton Malletier v. Dooney Bourke, Inc.*, No. 04 Civ. 5316, 2006 WL 3476735 (S.D.N.Y. Nov. 30, 2006), for instance, the Court deemed certain facts to be true where plaintiff failed to produce "customer communications" regarding the product at issue. As is the case here, plaintiff's failure was based on an unduly narrow interpretation of defendant's document request that was contrary to the agreement reached by the parties in the meet and confer process and contrary to what plaintiff represented to the Court that it would actually produce. *Id.* at *2-*3.[8] Similarly, in *Moore v. Weinstein Co.*, No. 3:09-cv-0166, 2012 WL 1657968 (M.D. Tenn. May 11, 2012), the Court ordered preclusive sanctions where Defendants had engaged in "unreasonable word-smithing of the Magistrate Judge's Orders, apparently in an effort to avoid producing otherwise responsive records." *Id.* at *7.

SEPTA has displayed a troubling pattern of inappropriate discovery conduct, including conduct that resulted in the November 15 injunction precluding SEPTA's counsel, as a member

---

[8] This decision was not based on an attempt to "narrow the definition of a statutorily defined term in order to avoid production," as SEPTA claims (at 22 n.14).

9

of the Plaintiffs' Executive Committee, from contacting and advising non-parties subpoenaed by BNYM, *see* Dkt. No. 325, and this Court's December 13, 2013 order requiring SEPTA to produce documents located through search terms that SEPTA's counsel had previously committed to use, but then unilaterally refused to run without prior notice to BNYM. *See* Dkt. No. 347. An award of expenses and attorneys' fees is a measured and appropriate sanction to address SEPTA's abuse and deter any future misconduct.

## CONCLUSION

For all these reasons and the reasons set forth in BNYM's opening brief, SEPTA should be ordered to (i) collect from its own files as well as those of its agents, and produce within ten days, the investment manager questionnaires (or similar information requests) issued to SEPTA's retained global investment managers, and the responses thereto; and (ii) reimburse BNYM for all fees, including attorneys' fees, incurred by BNYM after October 24, 2013 in seeking the production of these documents.

| | |
|---|---|
| Dated:  February 21, 2014 | Respectfully submitted, |
| | THE BANK OF NEW YORK MELLON |
| | THE BANK OF NEW YORK MELLON TRUST COMPANY, N.A. |
| | MELLON BANK, N.A. |

/s/ Reid M. Figel
_____
Reid M. Figel (RF-8663)
Rebecca A. Beynon (*pro hac vice*)
David L. Schwarz (*pro hac vice*)
Derek T. Ho (DH-0104)
Gregory G. Rapawy (*pro hac vice*)
Andrew C. Shen (AS-7963)
KELLOGG, HUBER, HANSEN, TODD,
  EVANS & FIGEL, P.L.L.C.
1615 M Street, NW, Suite 400
Washington, DC 20036
Telephone:  (202) 326-7900
Facsimile:  (202) 326-7999
rfigel@khhte.com
rbeynon@khhte.com
dschwarz@khhte.com
dho@khhte.com
grapawy@khhte.com
ashen@khhte.com

*Counsel for The Bank of New York Mellon, The Bank of New York Mellon Trust Company, N.A., and Mellon Bank, N.A.*