USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _6/26/14_

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
                                   :

In re:                                  :

                                  :

BANK OF NEW YORK MELLON CORP.  :
FOREX TRANSACTIONS LITIGATION.  :

                                  :

                                  :
--------------------------------------------------------X

**MEMORANDUM ORDER**

12 MD 2335 (LAK)(JLC)
related to 12 Civ. 3066 (LAK)(JLC),
11 Civ. 9175 (LAK)(JLC), and
12 Civ. 3470 (LAK)(JLC)

**JAMES L. COTT, United States Magistrate Judge.**

      The Bank of New York Mellon ("BNYM") moves to compel the production of certain

documents by non-party FX Transparency, LLC ("FXT"), pursuant to a subpoena issued out of

the District of Massachusetts.  FXT analyzes for its clients, who are foreign exchange ("FX")

transaction customers, how FX providers like BNYM set fees and rate structures.  FXT Letter

dated June 12, 2014 ("FXT Ltr."), at 1.[1]  Contending that the FXT documents are relevant to

"the Customer Plaintiffs' and the Department of Justice's central theory that BNYM

'overcharged' and deceived its customers" through its FX pricing practices, BNYM seeks the

following: (1) FXT "pitch materials" advertising its services; (2) FXT customer contracts;

(3) transaction cost analysis ("TCA") reports provided to clients; and (4) various emails sent to

clients and other parties.  BNYM Letter dated June 9, 2014 ("BNYM Ltr.") (Dkt. No. 404), at 1-

3.  For the reasons that follow, BNYM's motion is granted in part, subject to certain limitations

set forth in this Memorandum Order.

---

[1]     As a non-party, FXT has not docketed its letter in this Court.  Accordingly, the Court will
docket FXT's letter and make it part of the record in this case, subject to any redactions that FXT
seeks.  FXT should advise the Court by letter no later than June 30, 2014 if it wishes to submit a
redacted version of its letter, and if so, provide such a version to the Court for docketing.

1. **The Court's Authority Over This Motion**

As a threshold matter, the Court must determine whether it is empowered to grant the relief BNYM seeks, namely, enforcement of a subpoena issued out of another district court.  The Multidistrict litigation ("MDL") statute provides that the judge before whom the litigation has been consolidated "may exercise the powers of a district judge in any district for the purpose of conducting pretrial depositions."  28 U.S.C. § 1407(b).  Despite the limiting language as to depositions, however, it is widely accepted that this authority extends to all pretrial proceedings, including governance of non-party, extra-district subpoenas.  See, e.g., United States ex rel. Pogue v. Diabetes Treatment Centers of Am., Inc., 444 F.3d 462, 469, n.4 (6th Cir. 2006) ("[R]ationale underlying the MDL statute of 'just and efficient' resolution of pretrial proceedings requires the conclusion that Section 1407(b) . . . applies to both deposition subpoenas and documents-only subpoenas."); In re Neurontin Mktg., Sales Practices, & Products Liab. Litig., 245 F.R.D. 55, 57 (D. Mass. 2007) ("The purpose of [MDL] consolidation is to 'avoid duplicative discovery, prevent inconsistent pretrial rulings and conserve judicial resources.'") (quoting In re Air Disaster, 486 F. Supp. 241, 243 (Jud. Pan. Mult. Lit. 1980)); In re 'Agent Orange' Prod. Liab. Litig., 597 F. Supp. 740, 751-52 (E.D.N.Y. 1984) ("Once a case has been transferred by the [MDL Panel], the transferee court assumes complete jurisdiction for pretrial purposes."); but see VISX, Inc. v. Nidek Co., 208 F.R.D. 615, 616 (N.D. Cal. 2002) (Section 1407(b) does not extend to documents-only subpoenas).  See generally 15 Wright & Miller, Federal Practice and Procedure, § 3866, at 554 & n.9 (4th ed. 2013) ("[T]ransferee judge may

order nonparties to comply with subpoenas issued by other districts."). Therefore, despite FXT's objections, the Court concludes that it has authority to adjudicate this motion.[2]

## 2. **Documents to be Produced**

BNYM argues that the FXT documents are relevant to whether its customers were, in fact, aware that BNYM priced its FX transactions at unfavorable rates, which, if true, would undermine any claim that they were deceptively overcharged. BNYM Ltr., at 2 (citing United States v. Bank of New York Mellon, 941 F. Supp. 2d 438, 477 (S.D.N.Y. 2013) (plaintiffs' understanding of BNYM's rates is factual issue to be resolved at summary judgment stage)). The Court agrees. As a provider of "foreign exchange transaction cost analysis and currency execution consulting services," Affidavit of John Galanek dated June 12, 2014 ("Galanek Aff."), at ¶ 2, FXT offered BNYM's customers information and analysis directly relevant to BNYM's central defense.[3] However, the Court believes that certain limitations on the scope of the subpoena and the documents to be produced are appropriate, as discussed below.

### a. FXT's Contracts, Pitch Materials, and TCA Reports as to 25 Identified Entities

BNYM seeks FXT's contracts, pitch materials, and TCA reports as limited to 25 BNYM customers who engaged FXT's services, as previously identified by the parties in their pre-motion conferrals. See BNYM Ltr., Ex. E (David Rich Ltr. ("Rich Ltr.") dated May 21, 2014). FXT argues that the contracts and pitch materials are of no consequence as they would not contain details about BNYM's pricing practices as ultimately learned by FXT's clients. FXT

---

[2]     While FXT objects to this dispute being decided outside of Massachusetts, it acknowledges that "authority exists which would permit this Court to hear this matter." FXT Ltr., at 1, n.1.

[3]     Galanek, FXT's managing partner and chief operating officer, submitted an affidavit in opposition to BNYM's motion to compel that is attached as Exhibit A to FXT's letter to the Court.

Ltr., at 5.  Nonetheless, the Court believes that these materials should be produced under the broad scope of discovery envisioned by Fed. R. Civ. P. 26(b).  See Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978); Ellis v. City of New York, 243 F.R.D. 109, 111 (S.D.N.Y. 2007) ("Relevancy is broadly construed to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.") (citation omitted).  Although they may not in themselves convey substantive information about BNYM FX rates (which presumably are provided subsequently in the TCA reports), the solicitation and contract materials may be probative of precisely what type of knowledge about BNYM's FX pricing the putative class members sought to obtain by engaging FXT's services. The Court is satisfied, from the limitation to 25 clients and the fact that FXT has evidently already offered to produce these categories of documents, see Rich Ltr., at 1-2, that this production would not be overly burdensome.  FXT's contention that BNYM should first identify which TCA reports the latter may already possess, in order to minimize FXT's "time and expense of reviewing its files," FXT Ltr., at 5, is therefore unavailing.  BNYM's motion to compel production of the client contracts, pitch materials, and TCA reports is granted as to the 25 entities already identified by the parties, subject to designation as confidential material where appropriate.[4]

    b.  FXT's Emails

        i.  *Only Emails Between FXT and BNYM Customers Must be Produced*

In addition to email correspondence between FXT and putative class members, BNYM specifically seeks emails between FXT and financial journalists, which BNYM states will "offer

---

[4]    The Court notes that any documents produced as a result of this Memorandum Order will be subject to the terms of the Confidentiality Order entered by Judge Kaplan on June 20, 2012 (Dkt. No. 104) and any other existing protective orders in these litigations.

important context for FXT's public statements" about the FX industry in general and "provide evidence relevant to the industry understanding of BNYM's FX pricing."  BNYM Ltr., at 4.  As an initial matter, the Court directs that only emails between FXT and its clients who were also customers of BNYM must be produced.  The relevance of the discovery BNYM seeks is the probative value of any information or analysis about BNYM's FX fees that FXT may have provided *to those parties allegedly defrauded* by those pricing practices.  Correspondence between FXT and any other party, including journalists and other clients who were not BNYM customers, does not fall into this category.  Compelling production of documents beyond those related to putative class members' knowledge would impose an unwarranted burden on FXT as a non-party.[5]

       This limitation should also alleviate FXT's concerns that some of the emails covered by the subpoena may qualify as privileged communications, as FXT has been retained by "several Plaintiffs' counsel in this case to serve as a non-testifying, consulting expert."  FXT Ltr., at 1. Emails exchanged as part of litigation-related consultative work shall not be produced. Moreover, as BNYM proposes, all emails that are produced shall be subject to a standard "claw-back" and "non-waiver" agreement to be entered into between BNYM and FXT to govern the

---

[5]       BNYM attempts to justify production of emails sent between FXT and financial journalists on the basis of this Court's April 23, 2014 order denying BNYM's earlier motion to compel certain discovery related to plaintiffs' general understanding of FX industry terms. BNYM Ltr., at 4.  That order described third-party subpoenas as a potential source of information of general knowledge of industry practices.  See April 23, 2014 Order (Dkt. No. 376), at 2.  However, the Court made that assessment in the context of BNYM's failure to subpoena other industry participants who had executed FX transactions, not as a license for BNYM to demand every email potentially opining on the subject from analysts like FXT.  See id.  Moreover, the Court fails to see why FXT's readily available public statements, such as those made in the Wall Street Journal article cited by BNYM, see BNYM Ltr., at 4, are insufficient to provide the "evidence relevant to . . . industry understanding" that BNYM seeks.

return of any inadvertently-produced documents, including any privileged materials. See BNYM
Reply Letter ("BNYM Rep.") dated June 16, 2014 (Dkt. No. 408), at 1. See generally Zubulake
v. UBS Warburg LLC, 216 F.R.D. 280, 290 & n.81 (S.D.N.Y. 2003).

        *ii.*   *The Search Terms Must be Modified*

BNYM also requests that the Court compel production of emails that contain the phrases
"BNYM" (and related variants) within 100 characters of certain relevant terms, "State Street"
(and related variants), and "best execution." See BNYM Ltr., Ex. D (Proposed Search Terms), at
6. FXT objects on the basis that a search for all references to "BNYM" without any other
restrictions would impose a substantial hardship and produce an unwieldy quantity of responsive
emails. FXT Ltr., at 3. The Court notes, however, that BNYM proposes the search term
"BNYM" only in proximity to a further limiting term related to the litigation and FX transactions
(such as "standing instruction" and "lawsuit"). Together with the limitation on production to
emails only involving BNYM customers, the Court finds this proposed search reasonable and
narrowly tailored to result in documents related to information that FXT may have imparted to
BNYM's customers about its FX pricing.

Next, FXT objects to "best execution" as an overly broad search term. FXT Ltr., at 3.
To the extent that this standalone search term may result in emails having nothing to do with
BNYM, the Court is sympathetic to FXT's argument. Therefore, FXT is directed to produce any
emails resulting in a hit for "best execution" but only where that term occurs within 100
characters of "BNYM" and its related variants.

By contrast, the emails related to "State Street" that BNYM seeks need not be produced.
BNYM argues that emails referencing similar lawsuits against State Street "are important
because FXT used those lawsuits to highlight to BNYM's customers a broader industry

6

practice." BNYM Rep., at 2. That may be so, but the searches related to BNYM described above should be sufficient to result in the type of responsive emails BNYM seeks. An unrestricted search of any email pertaining to the State Street lawsuits, irrespective of any relationship to the instant case, is unwarranted. As the Court has explained in denying BNYM's prior motion to compel State Street-related discovery, "the mere existence of a lawsuit against a third-party entity for a similar practice (like State Street Bank) is insufficient to justify" this type of production. April 23, 2014 Order (Dkt. No. 376), at 2.

    c.  Remaining Objections

According to FXT, it should not have to produce any documents postdating January 2011, when the first whistleblower complaint against BNYM was unsealed. FTX Ltr., at 2. However, the class period in this action runs through October 4, 2011, the date plaintiffs themselves allege BNYM's FX fraud was "fully revealed" with the filing of the New York State lawsuit. BNYM Rep., at 2 (citing Consolidated Class Action Complaint (Dkt. No. 56), ¶ 11). FXT offers no authority or reasoning as to why production should be limited to the January 2011 cut off it seeks. BNYM is entitled to documents probative of class members' understanding of the allegedly fraudulent FX practices over the entire class period, up to and including October 4, 2011.

Finally, FXT asserts that the documents sought by BNYM should be obtained from parties in the case who may be in possession of them, and not from FXT as a third party. FXT Ltr., at 4 n.7 (citations omitted). BNYM observes that FXT is not entitled to ordinary protections for third parties, because it "sells its services with full knowledge that the documents" are relevant to litigation. BNYM Ltr., at 5 (citations omitted). The Court is not convinced that BNYM has made a sufficient showing supporting this contention, as nothing in the record

7

indicates that FXT's consulting services were offered in anticipation of litigation specifically.

Nonetheless, it believes that third-party discovery from FXT is appropriate in these

circumstances.  While there is a general "preference" for discovery to be obtained from parties to

litigation, Soto v. Castlerock Farming & Transp., Inc., 282 F.R.D. 492, 505 (E.D. Cal. 2012),

third-party subpoenas are not categorically ruled out where necessary.  See e.g., In re Plasma-

Derivative Protein Therapies Antitrust Litig., 2012 WL 1533221, at *4 (N.D. Ill. Apr. 27, 2012)

("[S]ervice of subpoenas for documents on third parties is a common and accepted practice,

regardless of what other parties are involved.").  The Court is mindful of the burdens inherent in

third-party discovery.  However, given the fact that this is a multidistrict action with numerous

purported class members, production of the discrete group of documents from FXT that the

Court has identified is the most efficient and practicable course.  Indeed, FXT evidently has

produced similar emails in related litigation.  See BNYM Ltr., Ex. N (David Rich Ltr. dated

April 12, 2012, at 4).

### 3.   **Timing and Costs**

FXT requests that, "to the extent the Court orders FXT to undertake any review of its

email server," it seeks "sufficient time" to do so and contends that three weeks (the period of

time requested by BNYM) is insufficient.  However, given the limitations that the Court has

imposed on FXT's productions, the Court believes that all production should be made by July

17, 2014, and that non-email production should be made on a rolling basis between the date of

this Memorandum Order and July 17.

FXT also requests that, to the extent the Court compels FXT to produce email records,

the costs attendant to such production be borne by BNYM.  FXT provides no authority in

8

support of this request, and other than noting that it has only four employees, Galanek Aff., ¶ 2,

no factual basis for such a result.  Accordingly, this request is denied without prejudice.

### 4.  **Conclusion**

For the foregoing reasons, BNYM's motion to compel the production of documents by

FXT is granted in part, subject to the modifications explained herein.  FXT is directed to produce

the identified documents on a rolling basis, with the last production to take place no later than

July 17, 2014.

**SO ORDERED.**

Dated: New York, New York
June 26, 2014

JAMES L. COTT
United States Magistrate Judge


A copy of this Memorandum Order has been emailed to:

David H. Rich, Esq.
Told & Weld LLP
drich@toddweld.com