KELLOGG, HUBER, HANSEN, TODD, EVANS & FIGEL, P.L.L.C.

SUMNER SQUARE
1615 M STREET, N.W.
SUITE 400
WASHINGTON, D.C. 20036-3215
———
(202) 326-7900

FACSIMILE:
(202) 326-7999

September 11, 2014

*Via Hand Delivery and ECF*

The Hon. Lewis A. Kaplan
United States District Judge
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, New York 10007

     Re:   *In re Bank of New York Mellon Corp. Forex Litigation*, No. 12 MD 2335 (LAK) (S.D.N.Y.)

Dear Judge Kaplan:

     We write on behalf of the Bank of New York Mellon ("BNYM") in response to the September 9, 2014 letter ("September 9 Letter") of Interim Co-Lead Counsel for the Customer Classes ("Plaintiffs") in the above-referenced case. Plaintiffs seek leave to file a reply based on their claim that a June 2009 draft legal memorandum from the Groom Law Group ("Groom Memo") – which was shared with Robeco Investment Management, Inc. ("Robeco"), a nonparty to this litigation that had been retained by The Bank of New York Mellon Corporation Benefits Investment Committee to manage funds for The Bank of New York Mellon Corporation Retirement Plans Master Trust (the "BNYM 401(k) Plan") – demonstrates that the disputed December 2007 communication from Richard Rua to A.J. Quitadamo is not privileged.[1] For the reasons set forth below, the Court should (1) deny Plaintiffs' request for leave to file a reply; (2) strike the September 9 Letter and attachments from the record; and (3) reject Plaintiffs' claim that the Rua E-Mail is not privileged.

     As a preliminary matter, Plaintiffs' submission of the September 9 Letter reflects sharp litigation practices that this Court should not condone. In their submission, Plaintiffs intentionally – and without notice to BNYM – made public a document prepared by BNYM's

---

[1] Robeco is one of approximately 200 nonparties that have produced a total of approximately 400,000 documents in these coordinated litigations, in response to subpoenas served by BNYM and the U.S. Attorney's Office. BNYM received the Robeco production on February 28, 2014. Pursuant to the parties' agreement regarding nonparty productions, BNYM promptly re-produced to Plaintiffs, on March 10, 2014, the Robeco production in the format in which it was received, together with 13 other nonparty productions.

Kellogg, Huber, Hansen, Todd, Evans & Figel, p.l.l.c.

The Hon. Lewis A. Kaplan
September 11, 2014
Page 2

counsel that prominently included the notation "DRAFT Privileged and Confidential, Attorney Work Product." At a minimum, Plaintiffs should have filed the document under seal.[2] Moreover, the Groom Memo, which postdates the Rua E-Mail that is the subject of Plaintiffs' motion by around 17 months, plainly relates to a different legal issue that is neither relevant to this litigation nor related to the issues for which Messrs. Rua and Quitadamo sought legal advice in December 2007. Plaintiffs' assertions to the contrary are simply not supportable. The manner in which Plaintiffs presented this issue to the Court provides a more than sufficient basis to deny their request to file a reply and to strike the September 9 Letter from the record. Alternatively, pending a resolution of BNYM's privilege claims with respect to the Groom Memo, the Court should direct that the Groom Memo, and Plaintiffs' statements disclosing the contents of that document, be filed under seal. It should also decline to consider the Groom Memo in connection with Plaintiffs' motion.

*First*, in addition to fashioning an appropriate response to the unacceptable manner in which Plaintiffs have unilaterally, without notice to BNYM, made public an obviously sensitive document, the Court should decline to consider the September 9 Letter because it is irrelevant to the motion pending before the Court. Plaintiffs ask the Court to accept that, because BNYM shared a preliminary draft of a legal opinion prepared by Andrée St. Martin (outside counsel to BNYM) with a few investment managers that BNYM had hired to manage its own 401(k) plan, it waived privilege with respect to a communication between Messrs. Rua and Quitadamo on a different issue that occurred more than 17 months earlier. *See* Reply at 1 (asserting that these two employees "discussed St. Martin's opinions on these same topics"). But they offer no plausible basis as to why the Groom Memo has any bearing on the determination whether communications between Mr. Rua and Mr. Quitadamo reflected in the Rua E-Mail are protected by the attorney-client privilege.

Other than the fact that the legal advice from the Groom law firm addressed ▌▌▌▌▌, there is no overlap between the legal advice in the Groom Memo and that in the Rua E-Mail: the communications concern different legal issues and involve different BNYM employees, different juridical entities, and different foreign exchange services. The Groom Memo – which was ▌▌▌▌▌ – addresses ▌▌▌▌▌

---

[2] As contemplated by the Court's Protective Order, BNYM has notified Plaintiffs that the Groom Memo is protected by the attorney-client privilege and/or work-product doctrine, and was inadvertently produced. *See* Pre-Trial Order No. 3, ¶ 15, *In re Bank of New York Mellon Corp. Forex Transactions Litig.*, 12-MD-2335-LAK, Dkt. No. 104 (June 20, 2012) ("Protective Order"). Pursuant to the Protective Order, BNYM has also advised Plaintiffs that, should the Groom Memo ultimately be determined to be unprotected by the attorney-client privilege and/or work-product doctrine, it will be designated a Highly Confidential or Confidential document that should not be filed in the public record.

Kellogg, Huber, Hansen, Todd, Evans & Figel, p.l.l.c.

The Hon. Lewis A. Kaplan
September 11, 2014
Page 3

███████.  The legal advice in the Rua E-Mail, by contrast, concerns ████████████████████████████████████████████████████████

Moreover, Ms. St. Martin's advice in the two documents was provided 17 months apart, in connection with different foreign exchange services offered by different legal entities pursuant to different foreign exchange and standing instruction programs.  In December 2007, when the Rua E-Mail was sent, Ms. St. Martin's guidance addressed ████████████████████████████████████████.  Ms. St. Martin's June 2009 advice concerned ████████████████████████████████████████████████████████  It is troubling that attorneys seeking to represent a class of pre- and post-merger custody customers are seemingly unaware of the basic differences between the standing instruction programs of each of the legacy institutions and merged entity after years of litigation.  In short, even assuming that the views expressed in the Groom Memo as to ████████████████████████ were discoverable (an issue that BNYM does not concede), the Groom Memo has no conceivable relevance to the question whether Mr. Rua's communications 17 months earlier with respect to a different ERISA compliance issue, involving different foreign exchange services, and different legal entities are protected by the attorney-client privilege.  And, for the reasons set forth in BNYM's September 5, 2014 letter (at note 2), Mr. Rua's communication itself has no bearing whatsoever on any claim actually asserted in the Master Customer Class Complaint.[3]

*Second*, although the Groom Memo plainly set forth legal advice and was marked "Privileged and Confidential, Attorney Work Product," Plaintiffs did not consult with BNYM prior to appending the Groom Memo to a public filing or make any effort to ascertain whether Robeco's production was inadvertent.  Their failure to do so is troubling, given that Plaintiffs themselves have taken the position, in analogous circumstances, that the production of a document by one of their investment managers was inadvertent.[4]  Given this lack of notice,

---

[3] BNYM takes strong issue with Plaintiffs' insinuations that BNYM attempted to mislead Groom and their claim that the Groom Memo "raises questions as to whether . . . Groom was misinformed by BNYM as to (a) how SI FX trades were actually priced and (b) whether 'session range' pricing was disclosed to custody clients and their IMs." September 9 Letter at 2.  Plaintiffs' contention that, because ████████████████████████████████████, it had an obligation to inform its custodial clients that it "could not meet all ERISA requirements when executing custodial FX trades," *id.*, is not only inaccurate, but also it has nothing to do with any claim asserted in the Master Customer Class Complaint.  Although Plaintiffs' assertions have no bearing on the privilege issues before the Court, BNYM stands ready to address any questions the Court may have regarding these matters.

[4] ████████████████████████████████████████████████████████████████████████████

Kellogg, Huber, Hansen, Todd, Evans & Figel, p.l.l.c.

The Hon. Lewis A. Kaplan
September 11, 2014
Page 4

BNYM has had insufficient time to investigate the circumstances of the transmission of the Groom Memo to Robeco and the subsequent production of that document. Based upon its preliminary review, however, BNYM has initially claimed protection over the Groom Memo on privilege and/or attorney work-product grounds, as it was disclosed by BNYM to investment managers for the BNYM 401(k) Plan, which shared a legal interest in ensuring that any foreign exchange transactions for the BNYM 401(k) Plan complied with ERISA's requirements. BNYM has also claimed that the document was inadvertently produced, and it has recalled the material pursuant to this Court's Protective Order. *See* Protective Order, ¶ 15. These circumstances alone provide a sufficient basis for this Court to decline to consider the Groom Memo or Plaintiffs' September 9 Letter at this time. BNYM, of course, would consent to the Court deferring consideration of the status of the Groom Memo until any privilege or work-product claims are resolved in accordance with the Protective Order, which (among other things) contemplates that the parties will meet and confer regarding such issues. *See id.*

For the foregoing reasons, and those provided in BNYM's letter of September 5, 2014, the Court should deny Plaintiffs' motion in its entirety.

Respectfully submitted,

*/s/ Reid M. Figel*

Enclosure

cc: MDL Litigation Service List
    USAO Litigation Service List

*See* Tr. of Thomas McFadden 40:8-64:9 (May 14, 2014) (attached as Exhibit A).