# Lieff Cabraser Heimann & Bernstein
Attorneys at Law

Lieff Cabraser Heimann & Bernstein, LLP
250 Hudson Street, 8th Floor
New York, NY 10013-1413
t 212.355.9500
f 212.355.9592

October 15, 2014

Daniel P. Chiplock
Partner
dchiplock@lchb.com

**VIA E-MAIL AND HAND DELIVERY**

The Honorable James L. Cott
500 Pearl Street
New York, NY 10007-1312

      RE: <u>In re Bank of New York Mellon Corp. Forex Litig., No. 12 MD 2335 (LAK)</u>

Dear Judge Cott:

      Customer Class Plaintiffs[1] request a conference pursuant to Local Rule 37.2[2] in order to resolve whether production of a document that has been improperly clawed-back and redacted by defendant The Bank of New York Mellon ("BNYM" or "the Bank") should be compelled.

      On September 9, 2014, Plaintiffs submitted to Judge Kaplan, in further support of a separate discovery motion[3], ███████████████████████ in this litigation. The document ███████████████████████, was initially produced to BNYM pursuant to a non-party subpoena issued by BNYM, and then reproduced to Plaintiffs and the USAO by BNYM on March 11, 2014. It was not marked Confidential or redacted █████████████████ . The ████████ contained █████████████████████████████████████████████████████████████████████████████[4]

      The ██████████, as initially produced and reviewed by Plaintiffs, contains highly relevant information █████████████████████████████████████████████████████████████████████████████

---

[1] "Customer Class Plaintiffs" or "Plaintiffs" refers to plaintiffs in the following putative Customer Class Cases: *Southeastern Pennsylvania Transportation Authority v. The Bank of New York Mellon Corp.*, No. 12-cv-3066-LAK; *International Union of Operating Engineers, Stationary Engineers Local 39 Pension Trust Fund v. The Bank of New York Mellon Corp.*, No. 12-cv-3067-LAK; and *Ohio Police & Fire Pension Fund, et al. v. The Bank of New York Mellon Corp.*, No. 12-cv-3470-LAK.

[2] This letter-motion is addressed to Your Honor pursuant to the Court's order of reference of all motions to compel dated December 3, 2013 [Dkt No. 341]. Further, pursuant to Judge Kaplan's recent guidance [Dkt No. 500], Plaintiffs have followed Your Honor's Individual Rules of Practice (the "Individual Rules") on discovery motions rather than the Pilot Project procedures. In accordance with the Individual Rules, this letter-motion is being emailed rather than filed via ECF, since it contains information that has recently been designated Confidential by BNYM pursuant to the Confidentiality Order [Dkt No. 104].

[3] That prior discovery motion was not confined to a motion to compel and asked for guidance on certain instructions being made by BNYM attorneys to BNYM witnesses in their depositions. See Dkt No. 452. Accordingly, that motion was addressed to Judge Kaplan.

[4] ██████████████████████████████████████████████████████████████████████████████████████████████.

The Honorable James L. Cott
October 15, 2014
Page 2

███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████ [5] This raises questions as to whether, in reaching the ███████████████████████████████████ was misinformed by BNYM as to how SI FX trades were actually priced and whether ████████ pricing was disclosed to custody clients and their IMs. Additionally, █████ makes no mention ████████████████ that the Bank offered additional methods of processing SI FX trades, including benchmarking and/or fixed spreads, to select custodial clients that would result in more favorable prices than what the session range afforded, ████████████████████████████ [6]

    The █████ document, as produced first by █████ and then by BNYM, contained no redactions. This is understandable, as the document, on its face, clearly is not privileged. The ████████████ was not an attorney-client communication when ████████████████████ The █████ author made this clear. At the bottom of the first page of ███████████████████████████ explicitly stated that while █████████████████████████████████████████████████████████████████████. This fatally undermines any argument that ████████████ were in anything amounting to an attorney-client relationship, or that the Bank and █████ shared a "common" or "joint defense" privilege, when the ████████████ was provided to █████. *See United States v. Ghavami*, 882 F. Supp. 2d 532, 537-38 (S.D.N.Y. 2012) (stating that the common interest doctrine can apply where the parties "(1) have a common legal, rather than commercial, interest; and (2) the disclosures are made in the course of formulating a *common legal strategy*") (emphasis added); *see also Bank of Am., N.A. v. Terra Nova Ins. Co.*, 211 F. Supp. 2d 493, 496-97 (S.D.N.Y. 2002) ("The mere fact that the parties were working together to achieve a commercial goal cannot by itself result in an identity of interest between the parties . . . The key consideration is that the nature of the [parties' common] interest be identical, not similar, and be legal, not solely commercial"); *Bowne of New York City, Inc. v. AmBase Corp.*, 150 F.R.D. 465, 479 (S.D.N.Y. 1993) (collecting cases) (noting that "waiver" of attorney-client privilege "will be found . . . even if the disclosure was made for a proper purpose to a person with

---

[5] Exact quotations from the unredacted ████████████████████████████████ are not available to Plaintiffs, since (as further discussed below) BNYM recently clawed these documents back pursuant to the Confidentiality Order [Dkt No. 104]. Accordingly, for all of their discussions of the █████████ herein, Plaintiffs are working from memory.

[6] ERISA § 408(b)(18) permits FX transactions to be performed for an ERISA-covered plan by a party in interest, such as a custodial bank or its affiliate, provided that "[a]t the time the [FX] transaction is entered into, the terms of the transaction are *not less favorable to the plan than the terms generally available in comparable arm's length foreign exchange transactions between unrelated parties* or the terms *afforded by the bank* in comparable arm's length foreign exchange transactions involving unrelated parties." (emphasis added).

[7] The fact that the █████ was prepared for BNYM in the first instance explains the ███████████ ████████████████████████ heading thereon. However, that designation lost its force once the █████ was communicated to █████████. This is obvious from ████████████████████████ ████████████████████, as well as applicable law.



The Honorable James L. Cott
October 15, 2014
Page 3

an interest that is common to him and the privilege holder, unless that common interest *is the receipt of legal services by an attorney*") (emphasis added).[8]

Furthermore, BNYM employee ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. That is manifestly inconsistent with a "shared legal interest" giving rise to a common privilege. *See Bank of Am., N.A.*, 211 F. Supp. 2d at 497 (holding that one party's ability to require another "to pay . . . its fees provides further evidence of the divergence of interests between the parties. Because the interests of the parties were not identical, the common interest doctrine does not apply."). The ▮▮▮▮ was essentially a set of guidelines ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮—precisely the sort of guidelines that have been the subject of extensive discovery directed toward Plaintiffs in this case, and which have been freely provided. "The only apparent 'legal' aspect to the venture" resulting in transmission of the ▮▮▮▮ "was a desire that the transaction[s] be legally appropriate." *Id.* "But that does not transform [a] common interest and enterprise into a legal, as opposed to commercial, matter." *Walsh v. Northrop Grumman Corp.*, 165 F.R.D. 16, 19 (E.D.N.Y. 1996).

Nor did the ▮▮▮▮ constitute attorney work product. Such protection is limited to documents prepared by (or at the direction of) counsel in connection with active or contemplated litigation. Fed. R. Civ. P. 26(b)(3); *Bowne*, 150 F.R.D. at 471 ("courts have generally held that [Rule 26(b)(3)] applies only to documents prepared principally or exclusively to assist in anticipated or ongoing litigation."). BNYM has not shown, and cannot show, that the ▮▮▮▮ was prepared in connection with any active or contemplated litigation. Further, even if the document could (wrongly) be described as attorney work product, that protection was waived. The ▮▮▮▮ author ▮▮▮▮▮▮▮▮▮▮▮▮ who lacked a common legal interest with BNYM, which it was. This eliminated any work product protection that could have applied to the ▮▮▮▮ before ▮▮▮▮▮▮▮▮. "The logic behind the work product doctrine is that opposing counsel should not enjoy free access to an attorney's thought processes." *In re Steinhardt Partners, L.P.*, 9 F.3d 230, 234 (2d Cir. 1993). Where, as here, BNYM (▮▮▮▮▮▮▮▮▮▮▮▮) voluntarily ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, "the need for the privilege disappears." *Id.* at 235 ("The waiver doctrine provides that voluntary disclosure of work product to an adversary waives the privilege as to other parties"); *see also Strougo*, 199 F.R.D. at 522 (work product privilege is waived by disclosure to third parties where "the disclosure substantially increases the opportunity for potential adversaries to obtain the information.").

That ▮▮▮▮ produced the document in unredacted form and with no confidential designation—in response to a subpoena issued by *the Bank*,[9] not Plaintiffs—is thus both readily

---

[8] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, also makes clear that the communication of the ▮▮▮▮▮▮▮▮▮▮ was not "necessary" for the effective consultation between ▮▮▮▮▮▮▮▮▮▮▮▮. *See Strougo v. BEA Associates*, 199 F.R.D. 515, 522 (S.D.N.Y. 2001).

[9] The fact that BNYM subpoenaed ▮▮▮▮ for documents in this case further undermines BNYM's argument that ▮▮▮▮ had or has a "shared" or common legal interest with BNYM here. *See, e.g., Shamis v. Ambassador Factors Corp. et al.*, 34 F. Supp. 2d 879, 893 (S.D.N.Y. 1999) (finding no common interest

*Footnote continued on next page*

The Honorable James L. Cott
October 15, 2014
Page 4

understandable and noncontroversial.  So is the fact that BNYM similarly provided the document in unredacted form—and with no confidential designation—to all parties in this litigation more than six months ago, several weeks after receiving it from ▇▇▇.  Federal Rule of Evidence 502 was intended to facilitate the free flow of discovery and reduce discovery disputes by enabling the post-production claw-back of privileged information, but it did not expand the scope of privilege or protect non-privileged documents.  The Bank got it right the first time in producing the documents at issue.  The ▇▇▇ production, in total, consisted of only 91 documents.  To the extent BNYM had a legally supportable belief that ▇▇▇ had a "shared . . . legal interest" with BNYM justifying the withholding or redaction of any ▇▇▇ documents, it was a relatively minor task to review and withhold such documents.  That the Bank did not do so is consistent with what is facially true of the ▇▇▇ and its accompanying ▇▇▇—the documents are not privileged.  Indeed, if the Bank truly believed that it had a "shared legal interest" with ▇▇▇, it would have been especially alert to privilege issues in its review of ▇▇▇ very modest production.

Notwithstanding the foregoing, after Plaintiffs submitted the ▇▇▇ document to the Court for its consideration, BNYM issued a "claw-back" notice to Plaintiffs under the Confidentiality Order.  Plaintiffs challenged the claw-back that same day (September 11, 2014).  On September 14, the Bank produced a replacement redacted version of the ▇▇▇ document.  *See* Exh. A (attached).  In addition to entirely redacting the ▇▇▇ (and designating the remainder of the document "Confidential"), BNYM redacted ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇.  This in particular is improper, since that language specifically undermines any claim of a "shared legal interest" between BNYM and ▇▇▇.

On September 22, 2014, the Court denied Plaintiffs' prior discovery motion without mentioning the ▇▇▇ or Defendants' motion to strike it from the record.  *See* Dkt No. 480.[10]  That same day, Plaintiffs reiterated their September 11 challenge to the Bank's claw-back notice, and asked if the Bank wished to meet and confer on the issue.  The Confidentiality Order requires that parties meet and confer within 15 business days of a challenge.  Dkt No. 104 at ¶15(f).  Citing its "ongoing investigation" of the circumstances surrounding the initial production of the ▇▇▇, and Plaintiffs' unavailability due to a number of intervening depositions, BNYM requested that the parties meet and confer after the 15-day period had expired.  Plaintiffs agreed, and the parties met and conferred on October 3, 2014 at 11 a.m. EDT.  Attending on the October 3 call at 11 a.m. EDT for the Bank and Mr. David Nichols (who is not a defendant in the Customer Class Cases) were seven lawyers—Rebecca Beynon, Andrew Goldsmith, Geoffrey Klineberg, and Jeremy Newman (all of the Kellogg Huber firm) and Jeffrey Resetarits, Daniel Laguardia, and Brian Calandra (of Shearman & Sterling).  Attending for

---

*Footnote continued from previous page*
where parties were not represented by same counsel, one party did not contribute to the other's legal expenses or exercise control over their participation in the legal proceedings, and no evidence was presented of a coordinated legal strategy).

[10] Indeed, the Court appeared to exclude the parties' letters concerning the ▇▇▇ from consideration in its ruling since they went beyond what was permitted under the Court's Individual Rules of Practice.  *See* Dkt No. 480 at 5.  The separate and distinct issue of whether the ▇▇▇, and the ▇▇▇ included therein, contain privileged communications or should be produced without redactions is accordingly now ripe for resolution.

The Honorable James L. Cott
October 15, 2014
Page 5

Plaintiffs were Daniel Chiplock (of Lieff Cabraser Heimann & Bernstein) and Daniel Mulveny (of Kessler Topaz Meltzer & Check).

The meet and confer lasted approximately ten minutes, during which time Plaintiffs reiterated the points made at length in its prior letters to the Court on the ▮▮▮▮▮▮▮▮▮▮ (*see* Dkt Nos. 462 and 473), and requested any additional case authority for the Bank's contention that the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ contained privileged communications.  The Bank supplied none other than *United States v. Schwimmer*, 892 F.2d 237, 243 (2d Cir. 1989), for the proposition that the common interest doctrine applied to the communications at issue. *Schwimmer* is inapposite, as it involved the work papers of an accountant who was hired by one of two criminal defendants to serve the joint interests of the two defendants.  In that case, the government accepted, for purposes of the appeal, that the defendants had a valid claim to the common/joint defense privilege.  Those circumstances are plainly distinguishable from here, where the Bank has not identified anything but a commercial relationship between BNYM and the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.  As *Schwimmer* itself provides, the common interest doctrine applies only "where a joint defense effort or strategy has been decided upon and undertaken by the parties and their respective counsel." *Id*. BNYM has provided no evidence of any such effort or strategy with respect to ▮▮▮▮▮▮.  After the Bank declined to provide Plaintiffs with any further substantive response to Plaintiffs' prior letters, even after three weeks of "investigating" the matter, Plaintiffs informed BNYM that the parties were at impasse and that Plaintiffs would be making a motion.

"Privileges are neither lightly created nor expansively construed.  Instead, they are recognized only to the very limited extent that permitting a refusal to testify or excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining the truth." *Bank of Am., N.A.*, 211 F. Supp. 2d at 496 (internal citations omitted).  Under any reasonable standard, the ▮▮▮▮▮▮▮▮▮▮ and its surrounding communications are not privileged.

For all of the foregoing reasons, the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ contained therein should be produced in unredacted form.  Plaintiffs request that the Court undertake an *in camera* review of the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ in connection with its consideration of this matter.  Plaintiffs conferred with BNYM with respect to this last request, and BNYM supplied the following statement: "In the event that the Court wishes to undertake an *in camera* review of this document in connection with its consideration of this matter, BNYM consents to that review."

The Honorable James L. Cott
October 15, 2014
Page 6

                                      Respectfully submitted,

                                      Daniel P. Chiplock
                      LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
                      *Interim Co-Lead Counsel for the Customer Classes*

cc:    Sharan Nirmul, Esq.
       KESSLER TOPAZ MELTZER & CHECK, LLP
       *Interim Co-Lead Counsel for the Customer Classes*
       (via e-mail)

       All other Counsel of Record (via e-mail)

1200384.3

# EXHIBIT A
## (Not Publicly Filed Pursuant to Protective Order)