## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| In re: | ) **CIVIL ACTION NO.**<br>) MASTER FILE |
| BANK OF NEW YORK MELLON CORP.<br>FOREX TRANSACTIONS LITIGATION | ) 12 MD 2335 (LAK)<br>)<br>) |
| This Document Relates to: 11-CV-09175 | )<br>)<br>) |

## MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFF'S MOTION FOR (I) CERTIFICATION OF THE SETTLEMENT CLASS, (II) AUTHORIZATION TO NOTIFY THE SETTLEMENT CLASS OF A PROPOSED SETTLEMENT, AND (III) SCHEDULING A SETTLEMENT HEARING

**BERNSTEIN LITOWITZ BERGER
   & GROSSMANN LLP**
Max W. Berger
John C. Browne
Jeremy P. Robinson
1285 Avenue of the Americas, 38th Floor
New York, NY 10019
Telephone: (212) 554-1400
Facsimile:  (212) 554-1444

*Counsel for Lead Plaintiff and
Lead Counsel for the Settlement Class*

Dated:  June 23, 2015

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................ii

INTRODUCTION ............................................................................................................... 1

BACKGROUND OF THE LITIGATION.................................................................................. 4

    A.   The Nature Of The Action ................................................................................. 4

    B.   The Action Was Actively Litigated For Multiple Years................................................. 5

ARGUMENT ................................................................................................................... 11

I.   THE SETTLEMENT IS THE RESULT OF EXTENSIVE, ARM'S-LENGTH
    NEGOTIATIONS AND REPRESENTS A VERY FAVORABLE OUTCOME FOR
    SETTLEMENT CLASS MEMBERS ................................................................................. 11

    A.   The Settlement Resulted From Good Faith, Arm's-Length  Negotiations
        Conducted By Well-Informed And Experienced Counsel............................................ 12

    B.   The Settlement Is An Excellent Result For The Settlement Class In Light Of
        The Benefits Of The Settlement And The Risks Of Continued Litigation................... 14

II.  CERTIFICATION OF THE SETTLEMENT CLASS FOR SETTLEMENT
    PURPOSES IS APPROPRIATE ...................................................................................... 18

    C.   The Settlement Class Satisfies The Requirements Of Rule 23(a) ............................... 20

        1.   Settlement Class Members Are Too Numerous To Be Joined ........................... 20

        2.   There Are Common Questions Of Law And Fact ................................................. 21

        3.   Lead Plaintiff's Claims Are Typical Of Those Of The Settlement Class............ 22

        4.   Lead Plaintiff Will Fairly And Adequately Protect The Interests Of The
            Settlement Class................................................................................................ 23

    D.   The Settlement Class Satisfies The Requirements Of Rule 23(b)(3)........................... 24

        1.   Common Legal And Factual Questions Predominate........................................... 24

        2.   A Class Action Is Superior To Other Methods Of Adjudication......................... 25

III.  NOTICE TO THE SETTLEMENT CLASS SHOULD BE APPROVED ......................... 25

IV.  THE PROPOSED SCHEDULE OF EVENTS .................................................................. 27

CONCLUSION................................................................................................................. 28

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
   298 F.R.D. 171 (S.D.N.Y. 2014) ...................................................................13, 19

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997) .....................................................................................19, 24

*In re Bank of Am. Corp. Sec. Litig.*,
   281 F.R.D. 134 (S.D.N.Y. 2012) ............................................................................20

*In re Beacon Assoc. Litig.*,
   282 F.R.D. 315 (S.D.N.Y. 2012) ............................................................................21

*In re Bear Stearns Cos., Inc. Sec. Derivative & ERISA Litig.*,
   909 F. Supp. 2d 259 (S.D.N.Y. 2012) ....................................................................12

*Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed
   Care, LLC*, 504 F.3d 229 (2d Cir. 2007) .......................................................20, 21, 22

*City of Providence v. Aeropostale, Inc.*,
   No. 11 Civ. 7132(CM)(GWG), 2014 WL 1883494 (S.D.N.Y. May 9, 2014) .......................26

*Cohen v. J.P. Morgan Chase & Co.*,
   262 F.R.D. 153 (E.D.N.Y. 2009) ............................................................................12

*Consol. Rail Corp. v. Town of Hyde Park*,
   47 F.3d 473 (2d Cir. 1995) ....................................................................................20

*D'Amato v. Deutsche Bank*,
   236 F.3d 78 (2d Cir. 2001) ....................................................................................12

*Denney v. Deutsche Bank AG*,
   443 F.3d 253 (2d Cir. 2006) ..................................................................................19

*In re Drexel Burhan Lambert Grp., Inc.*,
   960 F.2d. 285 (2d Cir. 1992) ..................................................................................23

*Fishoff v. Coty Inc.*,
   2010 WL 305358 (S.D.N.Y. Jan. 25, 2010), *aff'd*, 634 F.3d 647 (2d Cir. 2011) .................15

*In re FLAG Telecom Holdings, Ltd. Sec. Litig.*,
   574 F.3d 29 (2d Cir. 2009) ....................................................................................23

*In re Giant Interactive Grp., Inc. Sec. Litig.*,
   279 F.R.D. 151 (S.D.N.Y. 2011) ............................................................................13

*In re Hi-Crush Partners L.P. Sec. Litig.*,
    No. 12-Civ-8557 (CM), 2014 WL 7323417 (S.D.N.Y. Dec. 19, 2014) ................................ 13

*In re IMAX Sec. Litig.*,
    283 F.R.D. 178 (S.D.N.Y. 2012) ....................................................................................... 11, 19

*In re Initial Pub. Offering Sec. Litig.*,
    243 F.R.D. 79 (S.D.N.Y. 2007) .................................................................................................. 12

*Kalnit v. Eichler*,
    99 F. Supp. 2d 327 (S.D.N.Y. 2000), *aff'd*, 264 F.3d 131 (2d Cir. 2001) ............................. 15

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*,
    No. 04 Civ. 8144 (CM), 2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) ............... 19, 22, 24, 25

*Menkes v. Stolt-Nielsen S.A.*,
    270 F.R.D. 80 (D. Conn. 2010) .................................................................................................. 26

*Moore v. Paine Webber, Inc.*,
    306 F.3d 1247 (2d Cir. 2002) .................................................................................................... 24

*In re NASDAQ Market-Makers Antitrust Litig.*,
    187 F.R.D. 465 (S.D.N.Y. 1998) ............................................................................................... 14

*In re Pfizer Inc. Sec. Litig.*,
    282 F.R.D. 38 (S.D.N.Y. 2012) .......................................................................................... 21, 22

*In re Platinum & Palladium Commodities Litig.*,
    No. 10CV3617, 2014 WL 3500655 (S.D.N.Y. July 15, 2014) ................................................. 12

*In re Polaroid ERISA Litig.*,
    240 F.R.D. 65 (S.D.N.Y. 2006) ................................................................................................ 23

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
    163 F.R.D. 200 (S.D.N.Y. 1995) .............................................................................................. 11

*Robidoux v. Celani*,
    987 F.2d 931 (2d Cir. 1993) ...................................................................................................... 20

*Robinson v. Metro-North Commuter R.R. Co.*,
    267 F.3d 147 (2d Cir. 2001) ...................................................................................................... 21

*In re Sadia, S.A. Sec. Litig.*,
    269 F.R.D. 298 (S.D.N.Y. 2010) .............................................................................................. 22

*Shapiro v. JPMorgan Chase & Co.*,
    No. 11 Civ. 8331(CM)(MHD), 2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014) ...................... 23

*In re Veeco Instruments, Inc. Sec. Litig.*,
  235 F.R.D. 220 (S.D.N.Y. 2006) ...................................................................24

*In re Veeco Instruments Inc. Sec. Litig.*,
  No. 05 MDL 01695(CM) 2007 WL 4115809 (S.D.N.Y. Nov. 7, 2007) ................................13

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
  396 F.3d 96 (2d Cir. 2005)...................................................................11, 13, 26

*In re Warner Chilcott Ltd. Sec. Litig.*,
  No. 06 Civ. 11515 (WHP), 2008 WL 5110904 (S.D.N.Y. Nov. 20, 2008)...........................26

*Weinberger v. Kendrick*,
  698 F.2d 61 (2d Cir. 1982).................................................................19, 26

*In re WorldCom, Inc. Sec. Litig.*,
  219 F.R.D. 267 (S.D.N.Y. 2003) ...............................................................22

**STATUTES & RULES**

Securities Exchange Act of 1934 § 10(b)
  15 U.S.C. § 78j(b) ........................................................................5

Securities Exchange Act of 1934 § 20(a)
  15 U.S.C. § 78t-1(a) .....................................................................5

Securities Exchange Act of 1934 § 21D(a)(7)
  15 U.S.C. § 78u-4(a)(7) ...............................................................4, 26

Fed. R. Civ. P. 12(b)(6)....................................................................6

Fed. R. Civ. P. 23 ......................................................................4, 26

Fed. R. Civ. P. 23(a) ..............................................................18, 19, 20

Fed. R. Civ. P. 23(a)(1)...............................................................20, 21

Fed. R. Civ. P. 23(a)(2)...............................................................21, 22

Fed. R. Civ. P. 23(a)(3)...................................................................22

Fed. R. Civ. P. 23(a)(4)...................................................................23

Fed. R. Civ. P. 23(b)(3).........................................................18, 19, 24, 25

Fed. R. Civ. P. 23(g) .....................................................................23

Lead Plaintiff the State of Oregon, by and through the Oregon State Treasurer on behalf of the Common School Fund and, together with the Oregon Public Employee Retirement Board on behalf of the Oregon Public Employee Retirement Fund ("Lead Plaintiff" or "Oregon") is pleased to present this proposed $180 million cash settlement (the "Settlement") to the Court.[1]   Lead Plaintiff respectfully asks the Court to allow the Settlement to move past the preliminary stage by (i) approving the notice to the Settlement Class; (ii) preliminarily certifying the Settlement Class, Lead Plaintiff as class representative, and Lead Counsel Bernstein Litowitz Berger & Grossmann LLP as class counsel; and (iii) scheduling a hearing to consider final approval of the Settlement, approval of the proposed Plan of Allocation, and Plaintiffs' Counsel's motion for an award of attorneys' fees and reimbursement of expenses.

## INTRODUCTION

The proposed Settlement of this securities class action was achieved after nearly three-and-a-half years of highly contested litigation.   During that time, Lead Plaintiff expended significant efforts to prosecute this case on behalf of itself and a putative class of investors in BNYM common stock, including overcoming motions to dismiss, participating in a massive discovery process that included collaboration with government entities and other plaintiffs, taking, defending or otherwise participating in dozens of fact depositions, litigating multiple discovery motions, exchanging expert reports and briefing class certification.

This case did not settle until after the close of fact discovery, after the coordinated government and customer class actions had settled, and only after the parties had filed competing class certification briefs and completed expert discovery relating to class certification.   The

---

[1]  All capitalized terms used herein that are not otherwise defined herein shall have the meanings provided in the Stipulation and Agreement of Settlement dated as of June 23, 2015 (the "Stipulation"), which is attached as Exhibit 1 to the Notice of Motion.

proposed settlement is the product of a months-long mediation process conducted under the auspices of former United States District Judge Layn Phillips, a prominent mediator of complex securities actions, who ultimately provided a mediator's recommendation that was accepted by the parties.  Lead Plaintiff believes that the proposed Settlement of $180 million is an excellent result and is in the best interests of the Settlement Class.

The benefits of the proposed Settlement are particularly noteworthy when considered against the risks that Lead Plaintiff faced in establishing liability and damages in this securities class action.  As an initial matter, Lead Plaintiff (along with certain government agencies and customer plaintiffs) faced many challenges in developing the factual record necessary to support the underlying allegations about BNYM's foreign-exchange ("FX") pricing practices, the Bank's duties and obligations to its custody clients, and the information that was conveyed to the market about BNYM's FX pricing.  Additionally, in order to ultimately prevail in this securities class action, Lead Plaintiff would have had to establish the applicability of the "fraud on the market" theory of reliance, including by demonstrating "price impact" – *i.e.,* that the alleged misrepresentations on BNYM's website and elsewhere impacted the price of BNYM's common stock.  Lead Plaintiff would also have been required to show at summary judgment and prove at trial that the alleged misrepresentations regarding BNYM's FX pricing practices were material to investors in BNYM common stock (as opposed to BNYM's custody clients).

Finally, even if Lead Plaintiff were successful in establishing liability, there remained significant risks to establishing damages under the federal securities laws.  As discussed in more detail below, Defendants had serious loss causation arguments.  For example, Defendants argued that the declines in the price of BNYM common stock that followed each of the nine corrective disclosures alleged in the complaint were small, ranging from a low of $0.32 cents to a high of just

$0.98 cents.  Moreover, Defendants argued that several of the alleged corrective disclosures were not statistically significant when viewed in light of broader market movements and the historical pricing patterns of BNYM common stock.  Defendants further argued that out of those alleged corrective disclosures that *were* statistically significant, none actually revealed any new information concerning the alleged FX fraud or revealed any material risk that had been concealed by BNYM.  If Defendants were successful in all or some of their loss causation arguments, it would have substantially reduced or eliminated the Settlement Class's claim to compensable damages.

At the time Lead Plaintiff and Lead Counsel agreed to the Settlement, they thoroughly understood the strengths and weaknesses of the claims in the litigation.  Lead Plaintiff had: conducted a detailed investigation of the claims in the Action; successfully overcome Defendants' motions to dismiss; completed extensive fact discovery and class certification expert discovery; filed its opening brief in support of class certification; and reviewed Defendants' brief in opposition to the motion.  In connection with fact discovery, Lead Plaintiff had received and analyzed more than 20 million pages of documents from Defendants and third parties; taken, defended or otherwise participated in dozens of depositions of Defendants, non-parties, and plaintiff representatives; and worked extensively with experts in the areas of damages, market efficiency and FX pricing practices.  These efforts provided Lead Plaintiff and Lead Counsel with a thorough understanding of the relative strengths and weaknesses of the claims against Defendants.

At the final settlement hearing ("Settlement Hearing"), the Court will have before it more detailed motion papers submitted in support of the proposed Settlement, and will be asked to make a determination as to whether the Settlement is fair, reasonable and adequate.  At this time, Lead

Plaintiff requests only that the Court authorize the provision of notice of the Settlement to the Settlement Class.  Specifically, Lead Plaintiff requests that this Court enter the [Proposed] Notice Order Concerning Proposed Settlement (the "Notice Order"), attached as Exhibit 2 to the Notice of Motion, which, among other things, will:

    (i)    Approve the form and content of the Notice, Claim Form and Summary Notice attached as Exhibits 1, 2 and 3 to the Notice Order;

    (ii)    Find that the procedures established for distribution of the Notice and Claim Form and publication of the Summary Notice in the manner and form set forth in the Notice Order constitute the best notice practicable under the circumstances, and comply with the notice requirements of due process, Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"), and Section 21D(a)(7) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78u-4(a)(7), as amended by the Privative Securities Litigation Reform Act of 1995 (the "PSLRA"); and

    (iii)    Schedule the Settlement Hearing and set out a schedule and procedures for: disseminating the Notice and Claim Form and publishing the Summary Notice; requesting exclusion from the Settlement Class; objecting to the Settlement, the proposed Plan of Allocation, and/or Plaintiffs' Counsel's motion for an award of attorneys' fees and reimbursement of litigation expenses; and submitting papers in support of final approval of the Settlement.

Lead Plaintiff also requests preliminary certification of the Settlement Class, Lead Plaintiff as class representative, and Lead Counsel as class counsel, for purposes of the Settlement, under Rule 23.

## BACKGROUND OF THE LITIGATION

### A.    The Nature Of The Action

This Action asserts claims under the federal securities laws on behalf of purchasers of the common stock of BNYM during the period from February 28, 2008 through and including October 4, 2011 (the "Class Period") who were damaged thereby.  Lead Plaintiff alleged that Defendants misled investors by inflating the publicly reported earnings of BNYM through a fraudulent scheme in which BNYM improperly overcharged its custodial clients on non-negotiated (or standing instruction) FX trades.  Lead Plaintiff alleged that BNYM represented to its clients and the public at large that its standing instruction FX services were "free of charge" and that its custodial clients

received *inter alia* "best execution" (commonly understood as "best price") on those FX trades. Lead Plaintiff further alleged that, in reality, BNYM was systematically charging an undisclosed and unauthorized mark-up on its clients' FX trades and, by doing so, providing its clients with the *worst* (or near worst) prices of the day.   Lead Plaintiff further alleged that, when BNYM was targeted in multiple FX-related lawsuits and BNYM's unauthorized FX practices were gradually coming to light, Defendants misled investors about the reasons BNYM's FX revenues were declining compared to prior periods.   Based on these allegations, Lead Plaintiff asserted claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") against BNYM, its former CEO, former CFOs and various other executives.

> ### B.   <u>The Action Was Actively Litigated For Multiple Years</u>

The Action was commenced on December 14, 2011 in the Southern District of New York and styled *Louisiana Municipal Police Employees' Retirement System v.  The Bank of New York Mellon Corporation et al.*, 11 Civ. 9175 (LAK).   By Order dated March 29, 2012, the Court appointed Oregon as Lead Plaintiff and approved Lead Plaintiff's selection of Bernstein Litowitz Berger & Grossmann LLP as Lead Counsel for the proposed class.

By Order dated April 27, 2012, the Action (also referred to as the Securities Action) was consolidated for pretrial purposes with certain other actions concerning BNYM's FX pricing practices under the caption *In re: Bank of New York Mellon Corp. Forex Transactions Litigation*, 12 MD 2335 (LAK) (the "MDL Litigation").[2]   ECF No. 9.   To streamline the coordination of

---

[2] In addition to the Securities Action, the consolidated actions included: (i) three customer class cases: *Int'l Union of Operating Eng'rs, Stationary Eng'rs Local 39 Pension Trust Fund v. The Bank of New York Mellon Corp., et al.*, No. 12 Civ. 3067 (LAK), *S.E.P.T.A. v. The Bank of New York Mellon Corp.*, No. 12 Civ. 3066 (LAK), and *Ohio Police & Fire Pension Fund, et al. v. The Bank of New York Mellon Corp., et al.*, No. 12 Civ. 3470 (LAK); (ii) an ERISA class action, *Carver, et al. v. The Bank of New York Mellon, et al.*, No. 1 2 Civ. 9248 (LAK); and (iii) two actions by California governmental subdivisions, *Bank of New York Mellon Corp. False Claims Act Foreign Exch. Litig. v. Bank of New York Mellon Corp.*, No. 12 Civ.

pretrial proceedings in the MDL Litigation, the Court appointed a Plaintiffs' Executive Committee, which included Lead Counsel as one of three member firms.  The MDL Litigation was also later coordinated for discovery purposes with the Department of Justice's ("DOJ") action, captioned *United States of America v. Bank of New York Mellon, et al.*, No. 11 Civ. 6969 (LAK) (the "USAO Action").

On May 11, 2012, Lead Plaintiff filed and served the Consolidated Class Action Complaint (the "Complaint") which asserted securities fraud claims against Defendants BNYM and various BNYM executives, including its former CEO, Robert P. Kelly, its current CFO, Thomas P. Gibbons, its former CFO, Bruce W. Van Saun, its current Controller John A. Park and other key executives, including Jorge Rodriguez and Michael K. Hughey (collectively, the "Individual Defendants" or "Officer Defendants").[3]  ECF No. 56.

On June 22, 2012, Defendants moved to dismiss the Complaint under Rule 12(b)(6).  ECF Nos. 108-116.  On July 30, 2012, Lead Plaintiff served its omnibus opposition papers responding to all motions to dismiss.  ECF Nos. 143-144.  Defendants served separate reply briefs on August 17, 2012.  ECF Nos.  150, 151, 152, 154.

At a conference held on May 17, 2013, the Court indicated that it was "absolutely clear that some part of the securities case [will go] forward in light of" the Court's rulings concerning motions to dismiss in the related cases.  ECF No. 246 at 19.  Lead Plaintiff filed a motion to lift

---

3064 (LAK), and *Los Angeles County Employee Ret. Ass'n et al. v. Bank of New York Mellon Corp., et al.,* No. 12 Civ. 8990 (LAK).  *See* September 12, 2013 Scheduling Order (ECF No. 273) at n.1.

[3] The Complaint also asserted claims under Sections 11, 12(a)(2) and/or 15 of the Securities Act of 1933 arising from secondary offerings of BNYM common stock on May 11, 2009 and June 3, 2010 against certain defendants (including various directors of BNYM and certain underwriters of the two offerings). On March 23, 2015, the Court entered a Stipulation and Order dismissing those claims, including all claims asserted by additional plaintiffs Laborers' Local 235 Benefit Fund and Pompano Beach General Employees Retirement System in the Complaint against the director and underwriter defendants.  ECF No. 575.

the PSLRA discovery stay, which was fully briefed by June 7, 2013.  On June 10, 2013, by way of a summary order, the Court denied Defendants' motions to dismiss and lifted the PSLRA discovery stay.  ECF No. 252.

Following the Court's denial of Defendants' motions to dismiss, Plaintiffs' Counsel[4] promptly sought document discovery from Defendants and coordinated with the DOJ and the customer plaintiffs to ensure that discovery was conducted efficiently.  As part of this effort, Lead Plaintiff issued numerous document requests to Defendants, and engaged in extensive negotiations over the scope and adequacy of Defendants' discovery responses.

Beginning in 2013, Plaintiffs' Counsel engaged in wide-ranging fact discovery and discovery relating to class certification.  For example, Lead Plaintiff produced more than 50,000 pages of documents.  Lead Plaintiff and Plaintiffs' Counsel also reviewed and analyzed the more than 19.5 million pages of documents produced by Defendants.  Further, Lead Plaintiff and Plaintiffs' Counsel reviewed the voluminous productions made by non-parties.  Indeed, Defendants and the DOJ issued document requests to over 315 non-parties, which resulted in the production of more than four million pages of documents.

Assisted by a team of attorneys, Plaintiffs' Counsel prepared extensive "deposition kits," detailed "witness memoranda" and/or analyses for most deposition witnesses, many of which were also utilized by the DOJ and other plaintiffs' counsel in the MDL Litigation.  Plaintiffs' Counsel also played a key role in examining numerous important witnesses.  For example, Plaintiffs' Counsel took the lead in deposing such high-ranking BNYM executives as its former CEO (Defendant Kelly), its current CFO (Defendant Gibbons) and Controller (Defendant Park), as well

---

[4] Plaintiffs' Counsel includes Bernstein Litowitz Berger & Grossmann LLP and Stoll Stoll Berne Lokting & Shlachter P.C., Special Assistant Attorneys General and additional counsel for Lead Plaintiff.

as the former head of its FX division (Richard Mahoney) and former CFO (Defendant Van Saun). Plaintiffs' Counsel took the lead or actively participated in dozens of depositions, including the depositions of every BNYM witness (save two that were irrelevant to the securities case) and every non-party witness deposition that occurred in the MDL Litigation.  These depositions took place around the country including in Florida, California, Pennsylvania, Washington, Massachusetts, Virginia, Oregon, Texas and New York.  As for depositions of Lead Plaintiff's witnesses, Oregon produced and Plaintiffs' Counsel defended the depositions of six current or former employees of Oregon.[5]

Lead Plaintiff and Plaintiffs' Counsel also performed extensive work with respect to expert discovery, including working on an expert report by Dr. S.P. Kothari regarding the efficiency of the market for BNYM common stock and a rebuttal expert report by Dr. David DeRosa concerning the meaning of "best execution" for FX trades.

Throughout the discovery period, Plaintiffs' Counsel participated in numerous meet and confer sessions with BNYM's counsel regarding discovery.  Plaintiffs' Counsel also briefed multiple discovery motions.  These included two motions brought by BNYM to compel all documents from Lead Plaintiff regarding its "interactions with State Street," which Judge Cott denied (ECF No. 299) and this Court affirmed (ECF No. 330) and, in a separate round of briefing, Judge Cott denied again (ECF No. 376).  Plaintiffs' Counsel also briefed a motion for a protective order enjoining 23 additional non-party depositions noticed by BNYM in the MDL litigation (ECF No. 535) and opposed BNYM's motions for clarification and reconsideration of the Court's

---

[5] To conserve costs, Plaintiffs' Counsel did not attend the depositions of other plaintiffs in the MDL Litigation.

protective order enjoining the depositions of eleven absent customer class members (ECF No. 532) and briefed a motion to strike plaintiffs' rebuttal expert report (ECF No. 597).

On January 19 and 20, 2015, Plaintiffs' Counsel participated in a two-day mediation session before the Honorable Layn R. Phillips, a former federal district court judge in the United States District Court for the Western District of Oklahoma, with Defendants' counsel, the DOJ, counsel for plaintiffs in the New York Attorney General's Office lawsuit, and counsel for other plaintiffs in the MDL Litigation.  In advance of the mediation, the parties exchanged detailed mediation statements and exhibits, including detailed submissions concerning liability and damages in the Securities Action.  While the session did not end with a settlement in the Securities Action, Plaintiffs' Counsel and Defendants' counsel continued to engage in informal settlement discussions.

On March 19, 2015, BNYM announced that it had reached a proposed $714 million settlement of the DOJ's action and the customer class actions, as well as other private lawsuits and regulatory investigations, concerning BNYM's standing instruction FX practices.  In light of the undeniable discovery record amassed in the coordinated cases, BNYM made a number of admissions in connection with this settlement.  For example, BNYM admitted that its FX pricing practices gave standing-instruction clients "prices that were at or near the worst interbank rates reported during the trading day or session" and were "contrary to [the Bank's] representations" including that it provided "best rates."

Following the settlement of those actions, as the sole remaining member of the Plaintiffs' Executive Committee still litigating, Lead Counsel continued to vigorously prosecute the Securities Action.  Among other things, Lead Plaintiff and Plaintiffs' Counsel took the deposition of BNYM's former CFO (Defendant Van Saun) as well as an important deposition of a former

employee, Grant Wilson, who was a whistleblower and the relator in the *qui tam* actions that were filed. Plaintiffs' Counsel also participated in various non-party depositions during this period. Further, Lead Plaintiff produced its market efficiency expert, Dr. Kothari, for deposition by BNYM's counsel, which was defended by Lead Counsel.

During this post-DOJ-settlement period, Lead Plaintiff also filed its motion for class certification on March 27, 2015. ECF Nos. 586-589. Then, on April 23, 2015, Plaintiffs' Counsel filed a motion to de-designate various documents that BNYM had marked as confidential and which were cited in Lead Plaintiff's class certification motion. ECF Nos. 593-595. On April 27, 2015, BNYM filed papers in opposition to Lead Plaintiff's class certification motion and, separately, in opposition to Lead Plaintiff's motion to de-designate. ECF No. 598, 599-601. On April 28, 2015, Plaintiffs' Counsel filed reply papers in support of the de-designation motion. ECF No. 603. On April 30, 2015, the Court issued a ruling on the pending de-designation motion, which granted Lead Plaintiff's motion in "all respects." ECF No. 605. Plaintiffs' Counsel were working extensively on class certification reply papers when, as described further below, the parties agreed to settle the Action.

During the period from the January 2015 mediation through the briefing on Lead Plaintiff's class certification and de-designation motions, the parties continued to engage in settlement negotiations under the supervision of the mediator, Judge Phillips, who ultimately made a mediator's proposal. On May 12, 2015, Lead Counsel and Defendants' counsel participated in a settlement conference before the Hon. Lewis A. Kaplan. Shortly thereafter, the Parties accepted Judge Phillips' mediator's proposal and reached an agreement in principle to settle the Action for $180,000,000. Then, after significant additional negotiations, the parties memorialized their agreement to settle by executing a term sheet on May 21, 2015.

In light of the substantial benefits achieved and the cost and risks of continuing the litigation against Defendants through trial and appeals, Lead Plaintiff and Plaintiffs' Counsel believe that the Settlement is in the best interests of the Settlement Class.  Lead Plaintiff respectfully requests the Court's authorization to provide notice of the Settlement to the Settlement Class.  It is further submitted that the Court should, for purposes of the Settlement only, preliminarily certify the Settlement Class, Lead Plaintiff as class representative for the Settlement Class, and Lead Counsel as class counsel.

## ARGUMENT

## I.   THE SETTLEMENT IS THE RESULT OF EXTENSIVE, ARM'S-LENGTH NEGOTIATIONS AND REPRESENTS A VERY FAVORABLE OUTCOME FOR SETTLEMENT CLASS MEMBERS

The settlement of class action litigation is favored by public policy and strongly encouraged by the courts.  *See Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116-17 (2d Cir. 2005) ("We are mindful of the strong judicial policy in favor of settlements, particularly in the class action context.  The compromise of complex litigation is encouraged by the courts and favored by public policy.") (citations and internal quotations omitted); *In re IMAX Sec. Litig.*, 283 F.R.D. 178, 188 (S.D.N.Y. 2012) ("we emphasize that [] there is a 'strong judicial policy in favor of settlements, particularly in the class action context'") (citation omitted).

Currently, Lead Plaintiff only seeks the Court's authorization to notify Settlement Class Members of the Settlement and schedule the Settlement Hearing.  At this stage, the Court's function is "to ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing."  *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 209 (S.D.N.Y. 1995) (citation omitted).  This requires only "a determination that there is what might be termed 'probable cause' to submit the proposal to class members and hold

a full-scale hearing as to its fairness." *In re Platinum & Palladium Commodities Litig.*, No. 10CV3617, 2014 WL 3500655, at *11 (S.D.N.Y. July 15, 2014) (citation omitted).

"Where the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval," the Court should permit the notification of the proposed settlement to the class to proceed. *In re Initial Pub. Offering Sec. Litig.*, 243 F.R.D. 79, 87 (S.D.N.Y. 2007) (citation omitted); *accord Platinum & Palladium*, 2014 WL 3500655, at *11; *Cohen v. J.P. Morgan Chase & Co.*, 262 F.R.D. 153, 157 (E.D.N.Y. 2009). As summarized below, and as will be detailed further in a subsequent motion for final approval, the proposed Settlement is well "within the range of possible approval." *Initial Pub. Offering*, 243 F.R.D. at 87 (citation omitted).

### A. The Settlement Resulted From Good Faith, Arm's-Length Negotiations Conducted By Well-Informed And Experienced Counsel

The Settlement was achieved through good faith, arm's-length settlement negotiations between well-informed and experienced counsel with the assistance of an experienced mediator and after extensive discovery.

The arm's-length nature of the settlement negotiations and the involvement of an experienced mediator like Judge Phillips, a former federal judge, support the conclusion that the Settlement is fair and was achieved free of collusion. *See D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (a "mediator's involvement in . . . settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure"); *In re Bear Stearns Cos., Inc. Sec. Derivative & ERISA Litig.,* 909 F. Supp. 2d 259, 265 (S.D.N.Y. 2012) (finding a settlement fair where the parties engaged in "arm's length negotiations," including mediation before "retired federal judge Layn R. Phillips, an experienced and well-regarded mediator of complex securities

12

cases"); *In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 160 (S.D.N.Y. 2011) (a settlement was entitled to a presumption of fairness where it was the product of "arms-length negotiation" facilitated by Judge Phillips, "a respected mediator").

In addition, as noted above, the settling parties and their counsel were knowledgeable about the strengths and weaknesses of the case prior to settling.  For example, Lead Plaintiff and Plaintiffs' Counsel had engaged in multiple rounds of briefing on motions to dismiss, discovery motions and class certification and had participated in dozens of fact and expert depositions. Indeed, fact discovery and expert discovery concerning class certification had been completed when the Settlement was reached.  As a result, Lead Plaintiff and Plaintiffs' Counsel had an adequate basis for assessing the strength of the Settlement Class's claims and Defendants' defenses when they entered into the Settlement.  A proposed class action settlement enjoys a "presumption of fairness" where, as here, it is the product of arm's-length negotiations conducted by experienced, capable counsel after meaningful discovery.  *See Wal-Mart*, 396 F.3d at 116*; In re Hi-Crush Partners L.P. Sec. Litig.*, No. 12-Civ-8557 (CM), 2014 WL 7323417, at *3 (S.D.N.Y. Dec. 19, 2014); *In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 175 (S.D.N.Y. 2014).

Moreover, Lead Plaintiff, who is a sophisticated investor of the type envisioned by Congress when passing the PSLRA, has supervised this litigation and recommends that the Settlement be approved.  *See In re Veeco Instruments Inc. Sec. Litig.*, No. 05 MDL 01695 (CM), 2007 WL 4115809, at *5 (S.D.N.Y. Nov. 7, 2007) ("under the PSLRA, a settlement reached . . . under the supervision and with the endorsement of a sophisticated institutional investor . . . is 'entitled to an even greater presumption of reasonableness . . . .  Absent fraud or collusion, the court should be hesitant to substitute its judgment for that of the parties who negotiated the

settlement.'") (citation omitted).  Further, Lead Counsel, which has extensive experience in prosecuting securities class actions, has concluded that the Settlement is in the best interests of the Settlement Class.  *See In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 474 (S.D.N.Y. 1998) (Courts have consistently given "'great weight' . . . to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation.") (citation omitted).

Given that the Settlement is the product of an arm's-length negotiation involving the participation of an experienced mediator after extensive discovery, has been approved by a sophisticated Lead Plaintiff, and was entered into by experienced and informed counsel, the Settlement is entitled to a strong presumption of fairness.

**B.     The Settlement Is An Excellent Result For The Settlement Class In Light Of The Benefits Of The Settlement And The Risks Of Continued Litigation**

The proposed Settlement involves a cash payment of $180 million.  As will be explained in greater detail in advance of the Settlement Hearing, this recovery provides a substantial benefit to the Settlement Class in light of the risks posed by continued litigation.  Although Lead Plaintiff and Plaintiffs' Counsel believe that the claims asserted against Defendants are meritorious, they recognized that continued litigation posed very real risks that no recovery or a substantially lesser recovery might be achieved after summary judgment, trial and any appeals, which could also take many additional months or years.

If the Action were to proceed through dispositive motions and trial, Lead Plaintiff would have to overcome substantial defenses asserted by Defendants as to both liability and damages. Even though BNYM had admitted certain aspects of the alleged FX fraud perpetrated on BNYM's customers, Defendants still vigorously contested their liability for securities fraud.  For example, as recently as their class certification opposition brief, Defendants had denied liability, arguing

vehemently that, *inter alia*, a significant portion (if not most) of the proposed Class had "actual or inquiry knowledge of how [BNY Mellon's] SI trades were priced" and therefore "understood BNYM's SI pricing."  ECF No. 262 at 1.

Defendants also strenuously argued – and would have continued to argue – that the alleged fraud was immaterial as a matter of law.  In that regard, BNYM asserted that it was entitled to earn a spread on standing instruction FX trades and few, if any, of its custodial contracts prohibited it from doing so.  Thus, according to BNYM, there was nothing improper or unauthorized about the vast majority of the FX revenues it generated during the class period.  BNYM also contended that, even if plaintiffs in the MDL Litigation successfully established that certain custodial contracts prevented the charging of a mark-up, the revenue generated under those contracts was an immaterial amount – at most a few hundred million dollars over multiple years as compared to, for example, the Bank's yearly revenues of $13.9 billion, its $1.17 trillion in assets under management and its $25 trillion in assets under custody and administration (using 2010 figures).  In this context, there was risk that Defendants could succeed in establishing that any improper inflation of revenue over the three-and-a-half year class period was *de minimis*, and immaterial as a matter of law.

Further, to establish Defendants' liability for securities fraud, Lead Plaintiff would be required to establish that Defendants acted with *scienter – i.e.*, that they intentionally or recklessly misled BNYM investors.  The *scienter* requirement is commonly regarded to be the most difficult element to prove in a securities fraud claim.  *See, e.g., Fishoff v. Coty Inc.*, 2010 WL 305358, at *2 (S.D.N.Y. Jan. 25, 2010), *aff'd*, 634 F.3d 647 (2d Cir. 2011) ("[T]he element of scienter is often the most difficult and controversial aspect of a securities fraud claim"); *Kalnit v. Eichler*, 99 F.

Supp. 2d 327, 345 (S.D.N.Y. 2000) ("The element of scienter is often the most difficult and controversial aspect of a securities fraud claim"), *aff'd*, 264 F.3d 131 (2d Cir. 2001).

On the issue of *scienter*, Defendants were adamant that they had no intent to deceive. For example, BNYM asserted that it had no obligation to disclose its exact pricing methodology and spreads to clients. According to BNYM, any reluctance by its employees to disclose the details of BNYM's actual spreads did not amount to a calculated attempt to mislead clients, but was merely out of concern that clients may use such details to demand lower rates – just as they might in any industry. Further, Defendants would have continued to argue that, rather than acting intentionally or recklessly, any misstatements were made with a good faith belief in their truth and were at worst negligent. If Defendants succeeded on these arguments, then, even if Lead Plaintiff was able to demonstrate that Defendants made false statements that were material to investors, Defendants could nevertheless escape liability for securities fraud by establishing that they did not act intentionally or recklessly.

Additionally, in order to ultimately prevail in this securities class action, Lead Plaintiff had to establish the applicability of the "fraud on the market" theory of reliance, including by demonstrating "price impact" – *i.e.,* that the alleged misrepresentations on BNYM's website and elsewhere impacted the price of BNYM's common stock. In that regard, Defendants claimed that none of the alleged misstatements actually impacted the price of BNYM's common stock. Indeed, BNYM argued vigorously that statements published on a web page seen by few, if any, investors could not possibly have impacted its stock price.

Even if Lead Plaintiff could establish Defendants' liability for material misstatements made with *scienter*, there were also very significant risks to the class's ability to establish damages.

Defendants had significant "loss causation" and other arguments that challenged whether the class could recover any damages at all.

By way of background, the Complaint alleged that Defendants' fraudulent FX scheme was gradually revealed to the investing public through a series of nine partial allegedly corrective disclosures beginning in January 2011 – when it was revealed that certain Virginia pension funds had filed a FX-related *qui tam* lawsuit against BNYM in which the Virginia attorney general had intervened – and ending on October 5, 2011 – when the New York Attorney General and the U.S. Department of Justice sued BNYM for FX fraud.  According to the Complaint, each of these nine corrective disclosures revealed new information about the alleged FX fraud, which caused BNYM's stock price to decline and, in turn, resulted in losses for investors.

Defendants had multiple lines of attack on Lead Plaintiff's loss causation allegations.  As an initial matter, Defendants would have argued that the declines in the prices of BNYM common stock that followed each alleged corrective disclosure were small – all were less than $1 with nearly half of the declines under $0.50 – and were actually caused by reasons unrelated to the alleged FX fraud.  Further, Defendants would have argued that many of the alleged "corrective" disclosure dates did not involve stock price declines that were statistically significant in light of broader market movements and the historical patterns of BNYM common stock.

Moreover, with respect to certain corrective disclosure dates that did involve statistically significant price declines, Defendants would have contended that none of them involved the revelation of any new information concerning the alleged FX fraud.  In that regard, Defendants would claim that allegations that the Bank was defrauding its custodial clients first emerged on January 28, 2011 (when the Virginia suit was revealed) – and the remaining "corrective" disclosures essentially repeated the same or similar information without adding any new details

17

concerning the alleged FX fraud and therefore could not be used as a basis for establishing loss causation.  If Defendants were successful in jettisoning some or all of the alleged corrective disclosures, they would have substantially reduced or possibly even eliminated the class's claim to compensable damages.

In sum, the Parties disagreed on numerous complex issues of fact and law.  While Lead Plaintiff and Plaintiffs' Counsel believe that this case has substantial merit and that they had significant responses to each of Defendants' arguments, it is nevertheless true that Defendants had serious defenses that, if successful, would have resulted in the class recovering far less than the proposed Settlement or nothing at all.  In the context of these risks, Lead Plaintiff and Plaintiffs' Counsel believe that the Settlement is an excellent result for the Settlement Class.

## II.   CERTIFICATION OF THE SETTLEMENT CLASS FOR SETTLEMENT PURPOSES IS APPROPRIATE

Lead Plaintiff also requests that the Court preliminarily certify the Settlement Class for purposes of the Settlement under Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure. The proposed Settlement Class, which has been stipulated to by the Settling Parties, consists of:

> all persons and entities who or which purchased BNYM common stock during the period beginning on February 28, 2008 through and including October 4, 2011 (the "Settlement Class Period") and were damaged thereby

Stipulation ¶ 1(vv).  Excluded from the Settlement Class are: (i) Defendants; (ii) BNYM's subsidiaries and affiliates in which BNYM has a majority ownership interest; (iii) any person who is, or was at any time during the Settlement Class Period, an Officer or director of BNYM; (iv) the members of the Immediate Family of each of the Individual Defendants or of any other person who is, or was at any time during the Settlement Class Period, an Officer or director of BNYM; (v) the Former Underwriter Defendants and their respective Officers and directors at any time during the Settlement Class Period or currently; (vi) the members of the Immediate Families of

each person who is, or was at any time during the Settlement Class Period, an Officer or director of any of the Former Underwriter Defendants; and (vii) any entity in which any of the foregoing, at any time during the Settlement Class Period, held or as of May 21, 2015 held a majority interest; provided, however, that any Investment Vehicle shall not be deemed an excluded person by definition. *See id*. Also excluded from the Settlement Class are any persons and entities who or which exclude themselves by submitting a request for exclusion that is accepted by the Court. *See id*.

The Second Circuit has long acknowledged the propriety of certifying a class solely for purposes of a class action settlement. *See Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982); *Advanced Battery Techs.*, 298 F.R.D. at 180; *In re Marsh & McLennan Cos., Inc. Sec. Litig.*, No. 04 Civ. 8144 (CM), 2009 WL 5178546, at *8 (S.D.N.Y. Dec. 23, 2009). Indeed, certification of a settlement class "has been recognized throughout the country as the best, most practical way to effectuate settlements involving large numbers of claims by relatively small claimants." *IMAX*, 283 F.R.D. at 186.

A settlement class, like other certified classes, must satisfy all the requirements of Rules 23(a) and (b). *See Denney v. Deutsche Bank AG*, 443 F.3d 253, 270 (2d Cir. 2006). Nevertheless, the manageability concerns of Rule 23(b)(3) are not at issue for a settlement class. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 593 (1997) ("Whether trial would present intractable management problems . . . is not a consideration when settlement-only certification is requested.").

As demonstrated below, certification of the Settlement Class for purposes of the Settlement is appropriate here because the proposed Settlement Class satisfies all the requirements of Rule 23(a) and Rule 23(b)(3).

### C.      The Settlement Class Satisfies The Requirements Of Rule 23(a)

Certification is appropriate under Rule 23(a) if: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).

### 1.      Settlement Class Members Are Too Numerous To Be Joined

Class certification under Rule 23(a)(1) is appropriate where a class contains so many members that joinder of all would be "impracticable." Fed. R. Civ. P. 23(a). "Impracticable does not mean impossible," *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993), but "only that the difficulty or inconvenience of joining all members of the class make use of the class action appropriate." *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, LLC*, 504 F.3d 229, 244-45 (2d Cir. 2007). Numerosity is presumed when a class consists of forty members or more. *See Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995). "In securities fraud class actions relating to publicly owned and nationally listed corporations, the numerosity requirement may be satisfied by a showing that a large number of shares were outstanding and traded during the relevant period." *In re Bank of Am. Corp. Sec. Litig.*, 281 F.R.D. 134, 138 (S.D.N.Y. 2012).

The Settlement Class easily satisfies the numerosity requirement. The Settlement Class is comprised of all purchasers of BNYM common stock during the three-and-a-half-year Class Period. The number of shares of BNYM common stock outstanding throughout the Settlement Class Period was over 1.1 billion and the number of securities available to non-insiders ranged from 1.1 billion in the first quarter of 2008 to 1.2 billion shares in the third quarter of 2011, with an average public float of slightly less than 1.2 billion shares during the class period. *See* Expert

Report of Professor S.P. Kothari filed March 27, 2015 at ¶¶ 13, 110.  While the precise number of Settlement Class Members cannot be identified with specificity at this time, it is likely to be at least in the thousands or tens of thousands  Accordingly, the Settlement Class is sufficiently numerous that Rule 23(a)(1) is satisfied.

### 2.      There Are Common Questions Of Law And Fact

Rule 23(a)(2) requires the existence of at least one question of law or fact common to the class.  *See Cent. States*, 504 F.3d at 245; *Robinson v. Metro-North Commuter R.R. Co.*, 267 F.3d 147, 155 (2d Cir. 2001).  Claims under the securities laws easily meet the commonality requirement.  *See In re Beacon Assoc. Litig.*, 282 F.R.D. 315, 327 (S.D.N.Y. 2012) ("In general, where putative class members have been injured by similar material misrepresentations and omissions, the commonality requirement is satisfied."); *In re Pfizer Inc. Sec. Litig.*, 282 F.R.D. 38, 44 (S.D.N.Y. 2012) (commonality requirement is satisfied where it is alleged that "putative class members have been injured by similar material misrepresentations and omissions").

Here, all class members were allegedly injured as a result of the same misrepresentations and omissions on BNYM's website, in its SEC filings and elsewhere.  Indeed, the claims asserted against Defendants present many questions of law and fact common to all Settlement Class Members, including:

- whether the federal securities laws were violated by Defendants' conduct;

- whether the SEC filings, press releases and other public statements disseminated to the investing public during the class period contained material misstatements or omitted to state material information;

- whether the false statements allegedly made by Defendants were made intentionally or recklessly;

- whether, and to what extent, the market price of BNYM's common stock was artificially inflated during the class period; and

- whether the members of the Settlement Class sustained damages as a result of the alleged misconduct and, if so, the proper measure of damages.

*See, e.g.,* Complaint ¶ 149; *see also* ECF No. 259 (class certification brief) at 20, 22-34.  Because these questions of law and fact are common to all members of the Settlement Class, the commonality requirement of Rule 23(a)(2) is met.

### 3. Lead Plaintiff's Claims Are Typical Of Those Of The Settlement Class

Rule 23(a)(3) requires that the claims of the class representative be "typical" of the claims of the class.  Fed. R. Civ. P. 23(a)(3).  Typicality is established where "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability."  *Cent. States*, 504 F.3d at 245; *accord Pfizer*, 282 F.R.D. at 44; *In re Sadia, S.A. Sec. Litig.*, 269 F.R.D. 298, 304-05 (S.D.N.Y. 2010).  "Typical" does not mean "identical."  *See Marsh & McLennan*, 2009 WL 5178546, at *10.  It is well-established that "factual differences involving the date of acquisition, type of securities purchased and manner by which the investor acquired the securities will not destroy typicality if each class member was the victim of the same material misstatements . . ."  *Marsh & McLennan*, 2009 WL 5178546, at *10; *see also In re WorldCom, Inc. Sec. Litig.*, 219 F.R.D. 267, 280 (S.D.N.Y. 2003).

Here, the claims of Lead Plaintiff and all other members of the Settlement Class are based on the same alleged misleading misrepresentations and omissions.  Accordingly, Lead Plaintiff's claims arise from the same course of events as the claims of all Settlement Class Members.  Lead Plaintiff's claims and the claims of all other Settlement Class Members are based on the same legal theories and would be proven by the same evidence.  Thus, the Rule 23(a)(3) typicality requirement is satisfied.

### 4.   Lead Plaintiff Will Fairly And Adequately
### Protect The Interests Of The Settlement Class

Rule 23(a)(4) is satisfied if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The Court must measure the adequacy of representation by determining "whether 1) plaintiff's interests are antagonistic to the interest of other members of the class and 2) plaintiff's attorneys are qualified, experienced, and able to conduct the litigation." *In re FLAG Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009), *see also Shapiro v. JPMorgan Chase & Co.*, No. 11 Civ. 8331(CM)(MHD), 2014 WL 1224666, at *15 (S.D.N.Y. Mar. 24, 2014).

Lead Plaintiff Oregon is a sophisticated institutional investor with a substantial financial stakes in the litigation and it has represented, and will continue to represent, the interests of the Class fairly and adequately. There is no antagonism or conflict of interest between Lead Plaintiff and the other members of the proposed Settlement Class. On the contrary, Lead Plaintiff and the other members of the Settlement Class share the common objective of maximizing their recovery from Defendants. *See In re Polaroid ERISA Litig.*, 240 F.R.D. 65, 77 (S.D.N.Y. 2006) ("Where plaintiffs and class members share the common goal of maximizing recovery, there is no conflict of interest between the class representatives and other class members.") (citing *In re Drexel Burhan Lambert Grp., Inc.*, 960 F.2d. 285, 291 (2d Cir. 1992)). In addition, Lead Counsel has extensive experience and expertise in securities litigation and other class action proceedings throughout the United States, and is well qualified and able to conduct this litigation. Therefore, Rule 23(a)(4) is satisfied.[6]

---

[6] Lead Counsel has, and will continue to, fairly and adequately represent the interests of the Settlement Class. Accordingly, Lead Counsel should also be appointed as class counsel for the Settlement Class under Rule 23(g).

**D.     The Settlement Class Satisfies The Requirements Of Rule 23(b)(3)**

Rule 23(b)(3) authorizes class certification if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."   Fed. R. Civ. P. 23(b)(3).   The proposed Settlement Class satisfies these requirements.

**1.     Common Legal And Factual Questions Predominate**

"Class-wide issues predominate if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof."   *Marsh & McLennan*, 2009 WL 5178546, at *11 (quoting *Moore v. Paine Webber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002)).   Common issues will predominate where each class member is alleged to have suffered the same kind of harm pursuant to the same legal theory arising out of the same alleged course of conduct.   *See Marsh & McLennan*, 2009 WL 5178546, at *11; *In re Veeco Instruments, Inc. Sec. Litig.*, 235 F.R.D. 220, 240 (S.D.N.Y. 2006).   As the Supreme Court has noted, predominance is a test "readily met" in securities cases.   *Amchem*, 521 U.S. at 625.

Here, the same alleged course of conduct by Defendants forms the basis of all Settlement Class Members' claims against the Defendants.   There are numerous common issues relating to Defendants' liability (including the existence of material misrepresentations or omissions by Defendants), which predominate over any individualized issues.   *See, e.g.,* ECF No. 259 (class certification brief) at 22-34.   The predominance requirement of Rule 23(b)(3) is therefore satisfied.

24

**2.** **A Class Action Is Superior To Other Methods Of Adjudication**

Rule 23(b)(3) sets forth the following non-exhaustive factors to be considered in making a determination whether class certification is the superior method of litigation: "(A) the class members' interests in individually controlling the prosecution . . . of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by . . . class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." *See* Fed. R. Civ. P. 23(b)(3).

Considering these factors, a class action is clearly "superior to other available methods for fairly and efficiently adjudicating" the federal securities law claims of the large number of purchasers of BNYM common stock during the Settlement Class Period. Indeed, courts have concluded that the class action device in securities cases is usually the superior method by which to redress injuries to a large number of individual plaintiffs in light of the large and geographically dispersed nature of shareholder classes, the inefficiency of multiple lawsuits and the size of individual recoveries in comparison to the costs of litigations. *See, e.g., Marsh & McLennan*, 2009 WL 5178546, at *12 (the "class action is uniquely suited to resolving securities claims").

Here, the high cost of individualized litigation makes it likely that many Settlement Class Members would be unable to obtain relief without class certification. Moreover, any potential difficulties of managing the class action in further litigation and at trial need not be considered here because the parties seek to certify the Settlement Class solely for the purposes of settlement. In sum, the requirements of Rule 23(b)(3) are satisfied.

## III.   NOTICE TO THE SETTLEMENT CLASS SHOULD BE APPROVED

As outlined in the Notice Order, Lead Counsel will notify Settlement Class Members of the Settlement by mailing the Notice and Claim Form to all Settlement Class Members who can be identified with reasonable effort. The Notice will advise Settlement Class Members of (i) the

pendency of the Action and the certification of the Settlement Class; (ii) the essential terms of the Settlement, and (iii) Plaintiffs' Counsel's motion for an award of attorneys' fees and reimbursement of expenses.  The Notice will also provide specifics on the date, time and place of the Settlement Hearing and set forth the procedures, as well as deadlines for opting out of the Settlement Class and objecting to the Settlement, the proposed Plan of Allocation and/or Plaintiffs' Counsel's request for attorneys' fees and reimbursement of expenses, and for submitting a Claim Form.  The proposed Notice Order also requires Lead Counsel to cause the Summary Notice to be published once in the national edition of *The Wall Street Journal* and to be transmitted once over the *PR Newswire* within ten (10) business days of the mailing of the Notice.  Lead Counsel will also cause a copy of the Notice and Claim Form to be readily available on the website of the Claims Administrator.

The form and manner of providing notice to the Settlement Class as set forth in the Notice Order satisfy all the requirements of due process, Rule 23, and the PSLRA, 15 U.S.C. § 78u-4(a)(7).  The Notice and Summary Notice "fairly apprise the prospective members of the class of the terms of the proposed settlement[s] and of the options that are open to them in connection with the proceedings." *Wal-Mart*, 396 F.3d at 114 (quoting *Weinberger*, 698 F.2d at 70).  The manner of providing notice, which includes individual notice by first-class mail to all class members who can be reasonably identified, supplemented by additional publication and internet notice, represents the best notice practicable under the circumstances and satisfies the requirements of due process and Rule 23.  *See, e.g., City of Providence v. Aeropostale, Inc.*, No. 11 Civ. 7132(CM)(GWG), 2014 WL 1883494, at *2 (S.D.N.Y. May 9, 2014); *Menkes v. Stolt-Nielsen S.A.*, 270 F.R.D. 80, 105-06 (D. Conn. 2010); *In re Warner Chilcott Ltd. Sec. Litig.*, No. 06 Civ. 11515 (WHP), 2008 WL 5110904, at *3 (S.D.N.Y. Nov. 20, 2008).  Accordingly, Lead Plaintiff

respectfully submits that the proposed notice and related procedures are appropriate and should be approved.

## IV.    THE PROPOSED SCHEDULE OF EVENTS

As set forth in the proposed Notice Order, Lead Plaintiff and Plaintiffs' Counsel also respectfully request that the Court schedule a hearing (the "Settlement Hearing") to consider the final approval of the Settlement, approval of the proposed Plan of Allocation, the motion by Plaintiffs' Counsel for an award of attorneys' fees and reimbursement of Litigation Expenses, and any other related matters, and adopt the schedule for mailing and publication of notice to the Settlement Class, and the deadlines for submitting Claims and opting out of, or objecting to, the proposed Settlement, as set forth in the Notice Order.  The schedule provided in the Notice Order is driven by the date on which Notice Order is entered and the date selected for the Settlement Hearing, as follows:

| Event | Proposed Deadline |
|---|---|
| Deadline for mailing the Notice and Proof of Claim Form to the Settlement Class (the "Notice Date") | No later than 15 business days after entry of the Notice Order |
| Publication of the Summary Notice | No later than 10 business days after the Notice Date |
| Filing papers in support of final approval of the Settlement, the Plan of Allocation, and Plaintiffs' Counsel's motion for attorneys' fees and expenses | 35 calendar days before the Settlement Hearing |
| Deadline for Settlement Class Members to request exclusion from the Settlement Class or object to the Settlement, the Plan of Allocation, or the motion for attorneys' fees and expenses | 21 calendar days before the Settlement Hearing |

27

| Filing reply papers in support of final approval of the Settlement, the Plan of Allocation, and Plaintiffs' Counsel's motion for attorneys' fees and expenses | 7 calendar days before the Settlement Hearing |
|---|---|
| Deadline for submitting Claims | 120 calendar days after the Notice Date |

If the Court enters the Preliminary Approval Order within the next 14 days, Lead Plaintiff and Plaintiffs' Counsel respectfully submit that the Settlement Hearing be scheduled at the Court's convenience during the week of October 12, 2015 or as soon thereafter as may be convenient for the Court.

## CONCLUSION

For all the foregoing reasons, Lead Plaintiff respectfully requests that the Court enter the proposed Notice Order, attached as Exhibit 2 to the Notice of Motion, which will (i) preliminarily certify the Settlement Class, Lead Plaintiff as class representative, and Lead Counsel as class counsel, for purposes of the Settlement; (ii) approve the proposed form and manner of notice of the Settlement to Settlement Class Members; and (iii) schedule a date and time for the Settlement Hearing to consider final approval of the Settlement, Plaintiffs' Counsel's motion for an award of attorneys' fees and reimbursement of expenses, and any other related matters.

Dated:   June 23, 2015
         New York, New York

Respectfully submitted,

**BERNSTEIN LITOWITZ BERGER
& GROSSMANN LLP**

*/s John C. Browne*
Max W. Berger
John C. Browne
Jeremy P. Robinson
Kurt Hunciker
Katherine Stefanou
1285 Avenue of the Americas, 38th Floor
New York, NY 10019
Telephone:  (212) 554-1400

28

Facsimile:  (212) 554-1444

*Counsel for Lead Plaintiff Oregon and*
*Lead Counsel for the Settlement Class*

**STOLL STOLL BERNE LOKTING &**
**SHLACHTER P.C.**
Keith Ketterling
Keith Dubanevich
Scott Shorr
Keil Mueller
209 Southwest Oak Street
Portland, Oregon 97204
kketterling@stollberne.com
kdubanevich@stollberne.com
sshorr@stollberne.com
kmueller@stollberne.com

*Special Assistant Attorneys General and*
*Additional Counsel for Lead Plaintiff Oregon*

#908694